## HENRY BROOKS *vs.* INHABITANTS OF ACTON.

Middlesex.  Jan. 13. — Feb. 26, 1875.  AMES & ENDICOTT, JJ., absent.

In an action against a town to recover for personal injuries occasioned by an alleged defect in a highway caused by ploughing out the snow from a railroad track crossing it at grade, and thereby forming a ridge of ice and snow across the highway, the evidence as to the height of the ridge was conflicting. The plaintiff offered to prove the depth of the snow in the neighboring woods on the day of the accident. *Held*, that an exception to the exclusion of this evidence could not be sustained.

The exclusion of immaterial evidence offered in reply to immaterial evidence is within the discretion of the judge presiding at the trial.

In an action against a town to recover for personal injuries caused by an alleged defect in a highway, the defence was that the accident was owing to the fault of the horse driven by the plaintiff. The plaintiff offered in evidence a letter which he had received from the person who sold him the horse a week before, which stated that the horse was " all gentle." *Held*, that the evidence was rightly excluded.

In an action against a town to recover for personal injuries caused by an alleged defect in a highway, the defence was that the accident was owing to the fault of the horse driven by the plaintiff. A witness for the plaintiff testified that the horse was gentle, and, on cross-examination, denied that he had refused to tell the defendant's agent where the horse was. The agent was then allowed to testify that after the accident he met the witness, who, when asked by him where the horse was, answered, " He is about here, and has done no mischief since." *Held*, that the admission in evidence of this answer afforded the plaintiff no ground of exception.

A witness who has admitted on cross-examination that he had said that he would spend his last dollar to beat the other side, may be asked, by the party calling him, his reason for so saying.

In an action against a town to recover for personal injuries caused by an alleged defect in a highway, the plaintiff's evidence tended to show that the defect was an abrupt descent caused by a ridge of snow, where the highway crossed a railroad; that this defect caused the horse driven by the plaintiff to run, and that the plaintiff, to stop him, turned him towards a high bank, and the horse struck a post outside the travelled part of the highway, and the plaintiff was thereby injured. The judge instructed the jury that if the vice of the horse caused the running or con-

tributed thereto, the plaintiff could nòt recover, although the vice was unknown to the plaintiff, and although he used due and reasonable care in obtaining and managing the horse. *Held*, that the plaintiff had no ground of exception.

TORT to recover for personal injuries alleged to have been caused by a defect in a highway in the defendant town.

At the trial in the Superior Court, before *Bacon*, J., it was admitted that the defendant was bound to keep the highway in repair. The plaintiff put in evidence tending to show that on the evening of February 15, 1873, while travelling with a horse and sleigh along the highway, a defect therein, where it crossed a railroad at grade, caused his horse to jump and run up a hill, when the plaintiff, to save his life, the horse being beyond his control, attempted to guide the horse up a steep bank to stop him, and, in so doing, the horse turned out of the travelled part of the highway and ran upon a post some two feet therefrom, and the plaintiff was thereby injured.

It appeared that the travelled part of the highway was formed of ice and snow frozen and trodden down, and that there was but a single track. The plaintiff's evidence tended to show that there was a short and abrupt pitch in the travelled part of the highway from the top of the snow to the railroad track, from twelve to eighteen inches. The defendant's evidence tended to prove the contrary, and that the travelled part of the highway at the railroad crossing was a slight and gradual descent, and was safe and convenient for travellers passing over it. It was admitted that the highway at the railroad crossing had remained in the condition it was at the time of the accident for more than twenty-four hours.

The defendant put in the testimony of several witnesses as to the state of the weather and the snow-storms during the winter, which was stated in the bill of exceptions at length; and the road-master of the railroad, called by the defendant, testified that in snow-storms the track was cleared by a snow-plough run at about twenty miles an hour, which threw the snow each side of the track, taking it off down to the rails about four and a half feet in width, and throwing and scattering it over a distance of about twelve feet; but he could not tell how many snow-storms there had been, or how much snow had fallen, or its depth at any time.

The plaintiff offered the evidence of a witness who measured the depth of the snow in the woods in the neighborhood of the crossing on the morning of February 15, 1873, and offered to prove by him that the snow then and there measured two feet deep on a level; but the judge ruled that the evidence was incompetent, and refused to admit it. No measurements of the depth of the snow and ice were made other than this, but the judge allowed witnesses on each side to testify as to their estimate of the depth of the snow in the location of the way near the place of the accident at the time of the accident, and the several witnesses estimated it, varying from five inches to a foot in depth.

There was evidence tending to show that the plaintiff first had the horse February 8, 1873 ; that he got him to work in a treadmill, and that the horse was sent to him by one Bond, who testified as a witness for the plaintiff. There was evidence tending to show that the horse had run away with the plaintiff on one or two occasions before the night of the accident, and that on that night the horse had run away and was out of the control of the plaintiff long before he got to the railroad crossing ; but the evidence was conflicting on these points, and the plaintiff testified that he had, before the accident, used the horse with a sleigh and on his tread-mill, and the horse never had run away before and he believed him safe.

On the question of due care, the plaintiff offered in evidence the following letter from Bond to him, which he read on February 8, 1873 : " In regard to the horse you wanted I should send to you, I have traded for a good horse for your business and I think he will suit you, and so I shall put him aboard of the cars tomorrow morning, and you can look out for him when he gets there ; he is all gentle, nothing to fear. I will see you in a few days." The judge refused to admit the letter.

The plaintiff called Bond, of whom he had the horse, who testified to the safety of the horse as far as he knew. The defendant asked him if he had not refused to tell the defendant's agents where the horse was, the witness answered " No." The defendant then called one Billings, chairman of the selectmen of Acton, who testified that in November, after the accident, he met Bond and inquired of him where the horse was. The plaintiff

objected to the answering of the question by Billings, but the judge, against the plaintiff's objection, permitted him to answer, and he did answer as follows: "He said he is about here, and has done no mischief since."

The defendant introduced as a witness one Wheeler, who stated that there was no pitch at the crossing and that it was smooth there, that he was often over it up to the time of the accident. On cross-examination, he was asked if he had not said he would spend his last dollar to beat the plaintiff in this case, and answered "Yes." The defendant then asked him the reason for saying this, and against the plaintiff's objection he was permitted to testify, and did testify, that the reason was because he thought the plaintiff had no claim against the town and ought not to recover anything.

The defendant contended that there was no defect, and that the accident was caused by the want of care of the plaintiff, by the viciousness of the horse, and that if there was a defect, the horse was running away and out of the control of the plaintiff before he reached the defect.

The judge, among other things, instructed the jury as follows: If the vice of the horse caused the running or contributed to the running, the plaintiff cannot recover, although the vice was unknown to the plaintiff, and although he used due and reasonable care in obtaining and managing the horse.

The case was committed to the jury on Friday afternoon, September 18, with instructions to seal up their verdict if they agreed, and they might then separate and present it to the court on the following Monday, to which time the court adjourned. The jury agreed upon a verdict for the defendant on Friday evening, and sealed it up and separated. At the opening of the court on Monday the jury presented their verdict sealed up, and it was opened by the clerk and read to and affirmed by the jury. The jury were not instructed to find any fact specially, but upon the acceptance of this verdict the judge asked them, against the plaintiff's objection, if they found that the injury did not result from a defect in the highway, and they answered "Yes;" and the judge, against the plaintiff's objection, directed them to return that fact in writing and have it affirmed. The clerk thereupon wrote the following additional finding which the foreman signed,

and which was affirmed by the order of the court, against the plaintiff's objection : " The jury specially find that the injury did not result from a defect in the highway." The plaintiff alleged exceptions.

*D. S. Richardson & G. Stevens*, for the plaintiff.

*G. A. Somerby*, for the defendant.

WELLS, J.   1. The defect complained of was a ridge of ice and snow across the highway, caused by ploughing out the snow from the railroad track.   The snow thus thrown up, with the corresponding depression along the rail, produced an irregularity in the path of the travel upon the highway.   The testimony as to the depth of the ice and snow in the highway, that is, the height of the ridge, or depth of the groove, varied widely, and was conflicting.   The plaintiff offered to prove, by a witness who had measured it, the depth of the snow in the woods in the neighborhood, on the day of the accident.   The testimony was excluded. The facts are not such as to show that any reliable or safe inference as to the depth of a solid ridge of trodden snow and ice in the highway, at a railroad crossing, could be drawn from the depth of the light undisturbed snow in the woods, where it is protected from the direct action of the sun and winds, and in a measure from the rains also ; much less that it would aid in determining the height of a ridge formed by artificial means.   They do not show, therefore, that it was error for the judge at the trial to exclude this testimony.

We discover nothing in the wide range of testimony introduced by the defendant upon this point, whether material or otherwise, which entitled the plaintiff to meet it by this offer of proof.   The introduction of immaterial testimony to meet immaterial testimony upon the other side, is within the discretionary control of the presiding judge.

2. The recommendations of the horse, contained in the letter to the plaintiff from Bond, of whom the plaintiff bought the horse, were properly excluded.   So far as they were offered to prove the qualities of the horse, they were hearsay.   So far as they were offered to justify the conduct of the plaintiff as a prudent man in driving such a horse, they are not shown to have been made material by anything in the state of the evidence on that point.   We cannot conceive of any prejudice to the plaintiff from the exclusion of the letter.

3. Bond was a witness for the plaintiff. He denied, in cross-examination, that he had refused to tell the defendant's agents where the horse was. To contradict him, and to show his relations to the case, or the bias of his feelings, and thus affect his credit as a witness, it was competent to prove that one of the selectmen had made inquiries of him, to learn where the horse then was, and that he refused to give the desired information, or answered evasively. The ruling of the judge, to which exception is taken, was that Bond's answer to such an inquiry might be proved. This, we think, must be taken to have been the whole extent of the ruling, and the exception can extend no farther than the ruling. The objection and the ruling relate to the subject matter of the inquiry put to the witness, and not to the form, or relevancy of all parts of the statement given in reply to the question. *Nash* v. *Hunt*, 116 Mass. 237, 251. But even if they related to the answer as given and repeated by the witness, we cannot see that the whole answer might not tend to contradict or otherwise affect the credibility of the plaintiff's witness, Bond. If so, it was admissible for that purpose. That it might also tend improperly to throw doubt upon the previous character of the horse, would not render it inadmissible. No instructions against its use for that purpose were asked for.

4. Wheeler, one of the witnesses for the defendant, admitted in cross-examination that he had said he " would spend his last dollar to beat the plaintiff in this case." This would tend to impeach his credibility as a witness; and the defendant was entitled to his explanation of the reason or motive for the statement, as showing the real state of his mind towards the plaintiff, which prompted the expression.

5. The jury were rightly instructed that " if the vice of the horse caused the running, or contributed to the running, the plaintiff cannot recover." By " the vice of the horse," they must have understood some trick or habit of this horse other than the natural excitability common to horses. The direct and immediate cause of the injury was collision with an object, not alleged to be a defect, in consequence of the running of the horse while unmanageable by his driver. The defect complained of does not appear to have had any other connection with the accident, than by exciting or frightening the horse, and thus causing him to run.

It has been held that an object, even if in itself a defect, but with which no collision takes place, will not make a town liable for an accident resulting from the running of a horse through fright at the sight of the object. *Cook* v. *Charlestown*, 98 Mass. 80, and cases cited. *Cook* v. *Montague*, 115 Mass. 571. Whether contact with the object would make any difference, when the only direct and immediate effect of collision is to excite or frighten the horse, we need not determine; because the ruling at the trial included the additional element that the running was due, in part at least, to the vice of the horse. Finding that fact, as the jury must have done, if their verdict was rendered upon this ruling of the judge, they could not find that the defect in the way was the cause of the injury to the plaintiff.

That the vice of the horse was unknown to the plaintiff would bear only upon the question of his own due care; and in that aspect only is the case of *Palmer* v. *Andover*, 2 Cush. 600, in point. In that case the injury was the direct result of coming upon the defect in the way; and the only question was, whether it was by any fault of the plaintiff that his carriage thus came upon the defective place. The difficulty in this case is in tracing the injury back to the defect as its cause. That can only be done through the intermediate action of the horse; and the case sup-poses a horse with a vice or habit of running, and an injury as the result of his running.

6. The answer of the jury to the question propounded by the court appears to us to have embraced the whole issue, and not to be a special finding in any sense that can give it any practical effect. We regard it as without importance or significance, in the disposition of the case. *Exceptions overruled.*