## Dubois *versus* Bigler, Young & Co.

1. B., Y. & Co. agreed in writing with D. to construct two engines and put them in place and working order, so that when said engines and fixtures were set up they "shall constitute everything necessary to make them complete, both as to appearance and capacity." They furnished their drawings and guarantied that the materials and working of the engines should be first class and satisfactory to D. On his part D. was to prepare a good foundation fit for the machinery. In an action by B., Y. & Co. to recover the contract price of the engines D. defended on the ground that there was some defect in the engines and that he was unable to use them, and was compelled to procure another engine. The plaintiffs contended that the defect was in the foundation and not in the machinery. The defendant offered to prove that at the time of making the contract defendant·had proposed a different kind of foundation, when one of plaintiffs' firm insisted upon the kind which was built, and it was constructed accordingly. *Held*, that this evidence should have been admitted.

2. The defendant also proposed to prove that after the removal of the engines built by plaintiffs another engine which produced a greater strain upon the foundation was successfully used. *Held*, that this evidence should have been admitted.

3. Parol evidence of conversations between the parties at the time of making the contract, with the negotiations leading thereto, was admissible, to show the uses for which the engines· were intended and the place where they were to work, when the proposed proof contradicted nothing in the writing and called for no conversation other than necessary to establish the intended use of the machines.

4. As the contract stipulated that the drawings for the engines were to be furnished by plaintiffs and they guarantied the materials, workmanship and working of the engines, including everything necessary to make them complete, they thereby also guaranteed the success of the plan, unless it was hindered or prevented by the act or default of the defendant.

5. D. sued in the Common Pleas of Lycoming county to recover damages on the above contract. The action was referred under the Compulsory Arbitration Act, and the arbitrators filed an award of no cause of action, from which plaintiff appealed. When the cause came· to trial, after the jury were sworn, in open court, the plaintiff suffered a voluntary nonsuit and judgment accordingly. *Held*, that thereby the award was defeated. McKennan *v.* Henderson, 4 W. & S. 370, followed.

June 16th 1880. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Clearfield county :* Of May Term 1879, No. 107.

Debt by Bigler, Young & Co. against John Dubois, to recover the contract price for two engines built under a contract, the material portions of which were as follows:—

"Articles of agreement, made this 24th day of December 1872, by and between Bigler, Young & Co., of the borough of Clearfield, Pa., of the first part, and John Dubois, of the city of Williamsport, Pa., of the second part, witnesseth, that the parties of the first part agree to construct and have ready for delivery, on or before the 1st day of July next, to the said party of the second part, at their shops in Clearfield, Pa., two finished engines, to be placed as

shown in a set of drawings furnished by said party of the first part, at an angle of forty-five (45°) degrees, and to be connected to one and the same crank. (Here follows a description of the parts of the engines and the materials of which they were to be made.)

Engines to be set up by parties of the first part, upon the foundation prepared. The materials, workmanship and working of said engines and fixtures all guaranteed by said parties of the first part, in every respect as of first-class and satisfactory to party of the second part. All water-pipes and fixtures necessary to carry the water from the reservoir through the pump and heater to the mud-drum to be furnished and put in place by the party of the first part, and to be paid for by the party of the second part at manufacturer's prices.

The said engines, with their fixtures and attachments to be designed and constructed, to be made at a working speed of one hundred (100) revolutions per minute ; all to be put up in place and in working order by parties of the first part, as soon as said engines and materials and fixtures shall have been delivered to the site and foundations prepared by the party of the second part; a wagon sufficiently strong to carry the engines from Clearfield to mill site to be furnished by the parties of the first part, free of charge. Said engines and fixtures, when set up, shall constitute everything necessary to make them complete, both as to appearance and capacity, from the steam-drum to the mud-drum. They further agree to furnish the party of the second part with all the pulleys for the mill for which the above-named engines are designed, furnished with wrought-iron bushing and cast-iron nuts for fastening to their shafts, according to plans and drawings to be furnished by parties of the second part, for price or sum of eight (8) cents per pound, finished.

In consideration for which, the party of the second part agrees to pay unto the parties of the first part, for the engines and supporting frames, fixtures and attachments complete, including steam-pipe and connections and fixtures set up and completed, the sum of four thousand, two hundred and fifty dollars ($4250). And for the water-pipe and fixtures as before named, put up and complete, manufacturer's price ; for the pulleys finished as above named eight (8) cents per pound. No part of said consideration payable or due before July 1st 1873.

In witness whereof, we have set our hands and seals, at Williamsport, Pa., on the day and year first above written.

BIGLER, YOUNG & CO., [SEAL]
JOHN DUBOIS, [SEAL]"

The defence was that the engines were so defectively constructed that under the contract there could be no recovery therefor.

[Dubois v. Bigler.]

Dubois was the owner of a saw-mill in Clearfield county, with a capacity for sawing 50,000 feet of lumber per day. The engines were to propel the machinery of this mill. They were delivered in February 1874, but by reason of some defect, failed to do their work. Several efforts were made to remedy the defect, but without avail. In January 1876, the engines were removed and another substituted, which the defendant alleged did the work successfully.

At the trial, before Mayer, P. J., the defendant made the following offers of evidence:—

First offer. As the contract provides that the working of the engine shall be satisfactory to the party of the second part, and nothing in the contract shows what work it was to be employed in, defendant proposes to prove the conversation between the parties at the time of making the contract, with the negotiations leading thereto, to show the purposes, uses and requirements the engine was to satisfy.

Objected to as irrelevant and improper, the contract being without ambiguity and there being no allegation of fraud or mistake, and because the proposed evidence would substitute a conversation for the written contract, and tend to mislead the court and jury.

Objection sustained. (First assignment of error.)

Second offer: Defendant proposes to prove what work the engine was intended to do and where it was intended to work by conversation of the parties at the time of making the contract.

Objected to as irrelevant and improper. And because it is an additional offer to get in verbal communications to control or affect the contract, and that on matters that are not of any account and need no such explanation.

Objection sustained. (Second assignment.)

The plaintiffs alleged that the defect was in the foundation for the engines which was constructed by Dubois. The contract, as will be observed, provided that defendant should furnish the foundation, but was silent as to what plan was to be adopted or by whose direction it was to be built. There was a conflict of evidence as to the character of the soil on which the foundation was placed. In regard to this foundation the defendant made the following offer:

Third offer: To prove by John Dubois, the defendant, that at the time of making the contract defendant proposed a different kind of foundation from that finally built; and Mr. Young, a member of plaintiff's firm, insisted upon the kind which was built, giving his reasons therefor; and in accordance with that demand of plaintiffs, the foundation was constructed accordingly. This offer was for the following purposes: 1. To show by and under whose direction the foundation was built. 2. To explain the ambiguity of the contract in this respect. 3. To contradict

[Dubois *v.* Bigler.]

Mr. Young's testimony relating to the construction of the foundation.

Plaintiffs objected that the evidence was directly in contradiction of the written contract as to two express clauses; that the declarations of the parties could not be received . for such purposes, as the contract itself was the only evidence thereof; that the testimony of Mr. Young was upon cross-examination, and not proper, and that the evidence is irrelevant and improper.

. Objection sustained. (Third assignment.)

Also fourth offer: " Defendant proposed to prove—to establish the solidity of the foundation—that an engine of greater power, operating in a direction which produced greater strain on the foundation, with pillow block the same height as the one in dispute, within six months afterwards began to operate on the same foundation, and there has not been any trembling or change in the foundation. This engine was placed on the oundation in April 1876."

Objected to as irrelevant and improper. I already appears in evidence that another engine of different kind and construction has since been put on the foundation whch defendant had changed, to which state of things the present offer relates. . laintiffs further objecting that they are not to bo affected, and are not here prepared to discuss the acts and things done by defendant since this suit was brought, to which they are not parties and for which they are not responsible. It would be unjust to plaintiffs and against the rules of evidence.

. Objection sustained. (Fourth assignment.)

Also, defendant proposed to prove by actual tests and exhibits of material the character of the substance on which the foundation stands, by tests on each side, varying in distance from the foundation from thirty feet to within a foot on each side.

Plaintiffs object to proof as to what the soil was at so great a distance as thirty feet from the foundation; the only test is at the foundation. The proof offered is irrelevant and incompetent.

Objections sustained. (Fifth assignment.)

Plaintiffs offered record of suit No. 145, January Term 1876, in the Court of Common Pleas of Lycoming county, Pa., which suit was an action of covenant brought by John Dubois against Bigler, Young & Co. (who are now plaintiffs in this case), to recover damages for the non-performance of the written contract of December 24th 1872, upon which this suit is in part founded. This offer for the purpose of showing that said suit was by said Dubois ruled out and arbitrated, and an award duly rendered against him of no cause of action; and that said Dubois afterwards in said case suffered a voluntary nonsuit, and that judgment was entered accordingly. This being offered to show that the claim of damages made against the present plaintiffs by said Dubois for the non-performance of said

[Dubois v. Bigler.]

contract under seal was adjudicated; and that the said Dubois is bound by the same, and is not entitled to recover in this suit for the matters adjudicated by the suit and the award referred to. And also for all purposes for which the said record may be evidence—on the question of damages and in answer to defendant's claim for damages in this suit.

Objected to by defendant, and objection overruled. (Sixth assignment.)

The first and second points of defendant which the court refused were as follows:—

1. As plaintiffs, by their contract, guaranteed the materials, workmanship and working of the engines and fixtures, including everything necessary to make them complete, both as to appearance and capacity, they thereby guaranteed the success of the plan, as well as the materials and workmanship, unless that success was prevented or hindered by the act or default of the defendant after the making of the contract.

2. As the contract provides that the drawings for the engines were to be furnished by the plaintiffs, the guaranty included the success of the plan as well as of the materials and workmanship, unless that success was hindered or prevented by the act or default of defendant.

The refusal of these points constituted the tenth and eleventh assignments of error.

Verdict for plaintiffs for $3172.74. A motion for a new trial was overruled and judgment entered on the verdict. The defendant then took this writ and alleged that the court erred, inter alia, as set forth in the above assignments of error.

*George A. Jenks* and *Murray & Gordon*, for plaintiff in error. —The evidence offered was " in aid of the interpretation of the language of the contract" (2 Parsons on Contracts 547) and "not inconsistent therewith, but admissible to apply such instrument to its subject" (2 Parsons on Contracts 563; citing Noonan v. Lee, 2 Black 499); Case v. Cushman, 3 W. & S. 544; Barnhart v. Riddle, 5 Casey 93; Aldridge v. Eshleman, 10 Wright 420. The offer under the third assignment was admissible. There was nothing therein contradictory of the contract. The record of the prior suit should not have been admitted: McKennan v. Henderson, 5 W. & S. 370. The terms of the contract imposed the highest degree of responsibility upon the plaintiffs and warranted the construction of the contract in the points submitted.

*McEnally & McCurdy* and *Wallace & Krebs*, for defendants in error.—Respecting the third assignment, if there had been such talk between Young and Dubois at the time of making the contract, as is therein referred to, still it would not have shown, or

tended to show, that the building of the foundation was under the control of Bigler, Young & Co., or that they were responsible for its defects.    There was no ambiguity in the contract to be explained by such evidence, and it could not contradict Mr. Young's testimony in anything material or relevant, and was not admissible for that purpose.

If the new engine did work well, it would not prove that the foundation furnished for the double engine was sufficient. . It simply proved a collateral and irrelevant issue.    The record of the former suit was properly admitted.

The award had the effect of a judgment against Dubois until reversed on appeal or satisfied according to law.    Such are the provisions of the Act of June 16th 1836, Purd. Dig. 84, which in this respect follows the Act of 1810.    According to the decisions of our courts, suffering a voluntary nonsuit neither reverses nor satisfies the award, but is a relinquishment of the appeal, leaving the award remain in full force: King *v.* Sloans, 1 S. & R. 77; Hostetter *v.* Kaufman, 11 Id. 146; Girard Bank *v.* Schuylkill Bank, 8 W. & S. 242.

Mr. Justice TRUNKEY delivered the opinion of the court, October 4th 1880.

Bigler, Young & Co. agreed to construct two engines, furnish all pipes, connections and other necessary fixtures, and put the same in place and working order, so that "said engines and fixtures, when set up, shall constitute everything necessary to make them complete, both as to appearance and capacity."    They furnished the drawings themselves and guaranteed that the materials, workmanship and working of said engines should be first class and satisfactory to Dubois.    On his part Dubois was bound to prepare a good foundation, fit for the machinery, and convey the machinery from the shops to his mill site.    The contract does not set forth the location of the site, nor kind of mill, but the parties understood the use to which the engines were to be put, and they were placed on the foundation prepared by Dubois.    One party alleges the engines were entirely right and the foundation a complete failure; the other, that the foundation was perfect and the engines wholly unfit for the purpose of their construction.    Both agree that the engines, on that foundation, were useless.

From the whole case, as it is presented, the main question is, whether the defect was in the foundation or engines.    Upon this a large amount of testimony was taken, mostly as to the character of the foundation, and painfully conflicting.    It is represented on one hand that the foundation was firm as if standing on a rock; on the other, that it was unstable as if resting on fen-land.    Young, one of the plaintiffs, testified that such a double engine as that would require a more substantial foundation than one that stood hori-

[Dubois v. Bigler.]

zontal, because the heavy working parts are so far from the top of the foundation—so much further than an ordinary engine—it requires a very strong, substantial foundation. Certainly it was reasonable that the constructor of the engines, which required an unusually strong foundation, should give some directions respecting the building of it, and if he did it was competent to prove what they were, and that it was built accordingly. Such proof does not alter the written agreement, which only expresses that the defendant was to prepare the foundation; but it is consistent with his obligation to prepare a good one, and not place it on spongy earth or other unfit substance. Had the directions been given and not followed, it would be pertinent evidence for the plaintiffs in a dispute concerning the strength of the ground-work, and if followed, it is equally competent for the defendant. The plaintiffs agreed to furnish and set up described engines, with a warranty, and if the kind of foundation was stipulated, but omitted in the writing, it was a part of the contract which the defendant had no right to violate. If well built in the manner they directed, and placed on fit substance, he performed his part. The defendant's third offer should have been received.

We are also of opinion that the offer set forth in the fourth assignment was admissible. The jury would consider whether the foundation had been so changed as to affect its solidity, also if it was affected by the settling of the earth around it, also if the strain was equal to or greater than before, and thus determine the weight, if any, to be given to the proposed evidence. Whether the foundation had been changed was disputed; and so was the allegation that the engine caused as great a strain as did those furnished by the plaintiffs. But the grave question was, whether the foundation oscillated at all. Young testified that he saw it rock, swing backwards and forwards, lifting first one end and then the other; Dubois, that he never could discover that it moved, and never had an idea that it was possible for it to move; and each produced adminicular witnesses. If in a few months thereafter, when subjected to as severe a strain, that foundation neither moved nor trembled, the fact is pertinent in an effort to ascertain the truth.

The fifth assignment is not well taken. No objection was made to proof of the substance where the foundation stands, but to that thirty feet distant. There is no ground for the defendant to complain of restraint in his proof of tests, of the character of the substance under and near the foundation, and of exhibiting specimens to the jury.

In their history of the case the plaintiffs admit that their contract with defendant was " for a double engine for a large saw-mill that he intended to build in Brady township, Clearfield county." To that subject the contract relates, and it is necessary to know the

14 NORRIS—14

subject in order to intelligently decide whether the working of the engines and fixtures was satisfactory. Had the admission been made below as it is here, in absence of pretence that the mill differed from their understanding of what it should be, there would have been no need of parol evidence of the matter in defendant's second offer, but it was not, and it was error to reject the offer : Barnhart *v.* Riddle, 5 Casey 92 ; Clarke *v.* Adams, 2 Norris 309. The proposed proof contradicted nothing in the writing, and called for no conversation other than necessary to establish the intended use of the machinery.

The defendant's first and second points should have been affirmed. The engines and fixtures were for a particular purpose, to be made and placed by plaintiffs according to their drawings and specifications, the working of which was guaranteed to be first class and satisfactory. Materials, workmanship and plan were embraced in the engines and fixtures, which were warranted to do good work as the motive power for a large saw-mill. Their working ought to have been reasonably satisfactory, and if it was not because of a defect in the plan, or workmanship, or materials, there was a breach of the warranty. The plaintiffs contracted for the successful working of the machinery and are liable for its failure, unless success was prevented or hindered by the act or default of the defendant.

Dubois sued Bigler, Young & Co. in the Common Pleas of Lycoming county, to recover damages on the contract of December 24th 1872. That action was referred under the compulsory arbitration law, and the arbitrators filed an award of no cause of action, from which the plaintiff appealed. When the cause came to trial, after the jury were sworn, in open court, the plaintiff suffered a voluntary nonsuit, and *judgment accordingly.* Section 25, Act 1836, Pamph. L. 722, provides, " That the court may, after appeal, allow the plaintiff to suffer a nonsuit, with like effect as if the cause had not been referred as aforesaid, if the special circumstances of the case shall appear to require it." What special circumstances moved the court to allow the nonsuit do not appear, and it would be immaterial now if they did. It is enough that it was allowed. The record is in these words : " Plaintiff suffers a voluntary non-suit. Judgment accordingly, *per cur.*" This judgment unmistakably refers to the plaintiff's act and can mean but one thing, namely, that his act was by leave of the court. The acts of the plaintiff and of the court were at the same time and in agreement. It follows that the award was defeated : McKennan *v.* Henderson, 5 W. & S. 370. In Girard Bank *v.* Schuylkill Bank, 8 W. & S. 242, the opinion relates to the consideration of a motion for leave to enter a nonsuit, and does not touch a case where it has been suffered and allowed by the judgment of the court. The sixth assignment must be sustained.

[Dubois *v.* Bigler.]

It is unnecessary to remark on any of the remaining assignments, in which we discover no error.

Judgment reversed, and a *venire facias de novo* is awarded.