# McKee, Appellant, *v.* Pennsylvania Railroad. Company.

*Municipalities—Railroads—Streets—Dedication—Acceptance — Evidence—Ejectment.*

1. The authorization by a municipality of the construction of a railroad on a dedicated street is an acceptance of the dedication.

2. In an action of ejectment by the owner of the fee against a railroad company to recover possession of a strip of land in the bed of what was alleged by the defendant to be a city street, the right to occupy which defendant claimed by virtue of an ordinance, binding instructions for the defendant were proper where it appeared that the street was plotted on an ancient plan of partition in the year 1844; that in the succeeding five years it was recognized as a boundary in at least four proceedings in partition and subsequently in a number of deeds of conveyance of parcels of the land and in other proceedings; that the first municipality to include such street within its limits was incorporated in 1849, and that the borough engineer at that time, at the direction of the council, made a borough map on which the street was shown as a public highway, and that it also appeared as a public street on all borough maps, and was the subject of various borough provisions and regulations; that the borough became part of the city in 1872, and that the latter adopted an ordinance of 1886 granting to the defendant the right to occupy the said street, with its railroad tracks.

3. In such case a provision in the original deed of partition that "the streets are for the use of all the parties to the partition" was not inconsistent with a dedication of the streets and did not limit the use of such streets to the individual parties.

*Evidence—Ejectment—Ancient map — Declarations — Deceased surveyor—Photographs—Payment of taxes—Rebuttal evidence.*

4. A map prepared by a borough engineer in 1849 at the direction of borough council and found in the surveyor's desk after his death but never formally adopted, is admissible as evidence of the existence and status of a street shown thereon, as an ancient document and as the declaration of a deceased surveyor.

5. Photographs showing the conditions at the time of the trial are immaterial, where defendant's rights depended on conditions at the time of the acceptance of the dedication of the street many years prior to the trial.

6. An offer by plaintiff to show payment of taxes is not ordinarily admissible in evidence.

1917.]           Statement of Facts—Arguments.

Argued Oct. 17, 1916.   Appeal, No. 71, Oct. T., 1916, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1913, No. 818, on directed verdict for defendant in case of James Dalzell McKee v. Pennsylvania Railroad Company.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Ejectment for land in the City of Pittsburgh.   Before REID, J.

The facts appear by the opinion of the Supreme Court.

The jury found a verdict for defendant by direction of the court and judgment was entered thereon.   Plaintiff appealed.

*Errors assigned,* among others, were in affirming defendant's point for binding instructions, and various rulings on evidence.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* with him *John J. Heard,* for appellant.—Dedication is a matter of intention, and if the use be restricted to certain persons or to a certain class of persons to the exclusion of others, then there is no dedication: Poole v. Huskinson, 11 Meeson & W. 827 (1843); Tupper v. Huson, 46 Wis. 646 (1 N. W. Repr. 332); Trustees of the Methodist Episcopal Church v. Mayor & Common Council of Hoboken, 33 N. J. Law 13; Weiss v. South Bethlehem Boro., 136 Pa. 294.

A private easement cannot be changed into a public one by mere acceptance by the public: Hall v. McLeod, 59 Ky. 98; Gowen v. Philadelphia Exchange Co., 5 W. & S. 141; Lee v. Lake, 14 Mich. 12; Washington Female Seminary v. Washington Boro., 18 Pa. Superior Ct. 555; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318.

Defendant offered no sufficient evidence of an acceptance of any dedication by the borough: People v. Underhill, et al., 39 N. E. Repr. 333; Phillips v. City of Stamford, 71 Atl. Repr. 361.

*Thomas Patterson* and *James S. Crawford*, of *Patterson, Crawford, Miller & Arensberg*, for appellee, cited: Smucker v. Penna. R. R. Co., 188 Pa. 40; Sweigart v. Richards, 8 Pa. 436; Huffman v. McCrea, 56 Pa. 95; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Birmingham Borough v. Anderson, 48 Pa. 253; Schenley v. Pittsburgh, 104 Pa. 472.

OPINION BY MR. JUSTICE WALLING, January 8, 1917:

This is an action of ejectment to recover possession of a strip of land about ten feet in width and extending along the southerly line of the Pittsburgh & Lake Erie Railway right of way from Eighteenth street to Nineteenth street in Pittsburgh. It is within the lines of what is called Water street, and defendant claims the right to occupy same by virtue of an ordinance adopted by the council of said city in March, 1886. The main question here is whether it was then a public street. The Monongahela river adjoins the right of way of said Pittsburgh & Lake Erie Railway Company on the north.

In 1813 a tract of land located on the south side of said river, and embracing that here in controversy, was patented to Oliver Ormsby, and later became vested in John Ormsby, whose estate was partitioned in the Orphans' Court of Allegheny County in 1844. The plan of said partition shows inter alia Water street along the south bank of the river and of the width of one hundred feet more or less. Purparts or tracts "C" and "B" on said plan are bounded on the north by Water street; on the east by Joseph street (now Nineteenth street); on the south by Clifton street and on the west by Meadow street (now Eighteenth street). All of these streets are shown on the plan. In that partition purpart "B" was alloted to the heirs of Sidney Gregg, deceased, and purpart "C" to the heirs of Oliver Ormsby, deceased.

On the record of this partition, in the report of the commissioners, appears the following: "The alleys laid out in the plan are for the use of the respective owners

of the block.   The streets are for the use of all the parties to the partition." Later, by other proceedings in said Orphans' Court, purparts "C" and "B" by separate proceedings in partition were allotted in severalty.  In all there were at least four proceedings in partition respecting said property, between 1844 and 1849, inclusive, in each of which Water street is recognized and appears as the northern boundary thereof; and only in the partition first above stated is there any mention of the persons for whose use said streets and alleys were dedicated.

Between 1844, the date of said first partition, and 1886, when the city granted the railroad company the right to lay its tracks in the alleged street, there are some twelve deeds of conveyance of said lands, or of parts or parcels thereof, wherein Water street is recognized and referred to as the northern boundary of the property; as it also is in certain proceedings in the Orphans' Court authorizing some of these conveyances.

Plaintiff was born in 1884, and inherited from his father, who died in 1885, an undivided interest in said tracts "B" and "C," and they seem to have become his in severalty by proceedings in partition instituted by his guardian in 1888.   That proceeding as filed refers to Water street as the northern boundary of the property but was amended so as to extend the northern boundary to the river.   However it does not appear that any of the parties to the last named partition had record title to land north of the southern boundary of Water street.

At the trial, in addition to the records, plaintiff introduced evidence tending to support his claim of title to the land at issue by adverse possession of himself and his predecessors in title for more than twenty-one years prior to 1886, the defendant and its predecessor, the Pittsburgh and Whitehall Railroad Company, having been in continuous possession thereof since that date.

East Birmingham was incorporated as a borough in 1849, and embraced within its limits the land here in controversy.   Said borough became a part of the City of

Pittsburgh in 1872. So far as appears Water street, so-called, was never opened or used as a highway, except by the railroad, whose tracks were therein located. It was never expressly established or accepted as a highway by the municipality; but in 1849 R. E. McGowan, then engineer for said borough, at the direction of the council, made a borough map on which Water street is shown as a public highway of the width of 100 feet more or less, to low water line. And there is other evidence that it appeared as a public street on all of the borough maps, although the map made by McGowan was never adopted by the borough council nor recorded, but was found among his papers. The records of the borough show that in 1864 a contract was made for the grading of Clifton street, "the dirt to be placed on Water street between Joseph and Meadow streets." In 1865 the council of said borough adopted a resolution favoring a change of the location of Water street, and some days later repealed such resolution. And thereafter, in 1865 and 1866, the street is mentioned in the records of council as a street of the borough.

The court directed a verdict for the defendant on which judgment was entered.

In our opinion, what was done by the property owners constituted a dedication of Water street to the public as a highway; and the statement in the John Ormsby petition that "The streets are for the use of all the parties to the partition," did not change that result nor limit their use to those individual parties. So far as appears no such contention was ever made as to the other streets mentioned in the partition. Such language is omitted in all subsequent partitions, conveyances, etc., wherein Water street is recognized.

What was done by the borough was a clear recognition of Water street and amounted to an acceptance of the dedication, and thereby said street became an unimproved public highway. Authorizing the construction of a railway in a dedicated street is an acceptance of the

dedication: 13 Cyc. 471. We adopt the following from the opinion of the learned trial judge:

"Our conclusion, therefore, is that there was a dedication of Water street and an acceptance of it by the borough, or at least a recognition of it as one of the highways of the municipality. This made the dedication irrevocable, and, if it were necessary, this quality of irrevocability was fixed by the conveyances by the owners to third parties, already adverted to.

"The facts, therefore, are brought within and controlled by the cases of City of Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Birmingham Boro. v. Anderson, 48 Pa. 253; Schenley v. Pittsburgh, 104 Pa. 472, and Commonwealth v. McDonald, 16 S. & R. 390.

"The result of this conclusion is that the plaintiff's abstract upon which he relied and the conveyances set forth in it did not show title in him as to the portion of the Ormsby property covered by Water street, within the limits of which the disputed strip is admittedly situated."

It follows he must recover if at all under his claim of adverse possession. But title to a public highway cannot be acquired by encroachment or adverse possession: Commonwealth v. Moorhead, 118 Pa. 344.

In this view of the case it is not necessary to pass upon the question as to the sufficiency of the evidence of such possession, nor as to the rulings of the trial court on questions of evidence relating thereto. However we see no reversible error. The McGowan map was admissible as an ancient document, and as the declaration of a deceased surveyor: Birmingham Boro. v. Anderson, 40 Pa. 506.

Defendant's rights depend upon the conditions existing in 1886, when the ordinance granting its predecessor the right to lay tracks in Water street was enacted, and hence photographs showing conditions along Water street at the time of trial were immaterial. The offer to

show payment of taxes by plaintiff was wholly indefinite and not rebuttal.

The court below committed no error in directing a verdict for the defendant and the judgment is affirmed.