Nestor, Appellant, *v.* George et al., Trustees.

Argued March 29, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Clyde P. Bailey*, with him *Dane Critchfield* and *Bailey & Critchfield*, for appellant.

*Leo A. Nunnink*, with him *J. R. McNary*, for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 12, 1946:

This is an appeal from the refusal of the court below to grant a new trial. The plaintiff brought a suit in trespass against the defendant, claiming damages for injuries to his right eye. His claim was that on May 2nd, 1942, as a street car on which he was a passenger, approached an intersection and he was in the act of depositing his fare in the coin box before alighting, "the car stopped with a jerk, the doors were thrown open and the fare register cord struck him in the right eye." He continued on the street car, a short distance, to the end of the line and there he examined the cord and "found on the bottom" thereof "a steel nut". This cord was said to be "similar to a clothes-line, but heavier". He said there were "several knots tied in the free end of the rope and the steel nut was at the bottom". As a result of the blow to the right eye, the plaintiff claimed its *retina* was *detached* and its sight destroyed. At the second trial on February 24, 1945, a verdict was returned in favor of the defendant. After the refusal of a new trial, this appeal followed.

The second assignment of error is based on the admission of testimony in behalf of the defendant showing a condition of the fare rope at a period of time five days prior to the accident. This evidence was not followed by any proof that the condition the rope was in five days before the accident continued until the date of the accident. This assignment is sustained. Henry's "Pennsylvania Trial Evidence", Second Edition, Sec. 32, p. 51. says: "Whenever the condition of a particular place or thing at a certain time is in question, evidence of its condition at a prior or subsequent time is admissible

*if accompanied by proof that it has not changed in the meanwhile* [italics supplied] . . . But where it appears from the circumstances that the condition of a thing or place at another time would afford no just criterion of its condition at the time to which the inquiry relates, evidence of condition at such other times will not be received." Citing *McKee v. Pa. R. R.*, 255 Pa. 560, 565, 100 A. 454; *Richardson v. Public Ledger Co.*, 260 Pa. 602, 606, 103 A. 955.

The third assignment of error is based on the admission of evidence in behalf of the defendant of the usual and customary condition of fare cords in other street cars of the defendant. This evidence was inadmissible. The fact that other fare cords on the street cars of the defendant company did not have a nut on the end of them did not tend to disprove the plaintiff's allegation that the cord in question did have a nut on its end. The evidence was, therefore, irrelevant. In *Com. v. Crowell*, 52 Pa. Superior Ct. 539, it was held that where in a prosecution under the Ice Cream Act of March 24, 1909, P. L. 63, it is shown that a pint of ice cream for the sale of which the defendant was prosecuted had been analyzed and found deficient in butter fat, it is not error to exclude the evidence of experts to show that samples taken from other parts of the same can from which the pint was taken, might show different percentages of butter fat. See *Dubois v. Bigler et al.*, 95 Pa. 203, and also *Loss v. Avalon Borough*, 276 Pa. 207, 119 A. 915; *Taylor v. Monroe*, 43 Conn. 36; *Brooks v. Acton*, 117 Mass. 204. The third assignment of error is sustained.

The fourth assignment of error is based upon the refusal of the court to admit the testimony of witness, Hon. James L. O'Toole, Jr. The witness represented plaintiff as counsel, in a suit against the Pittsburgh Railway Company, for injuries sustained by the plaintiff's eye while a passenger on that company's street car in October 1928. Plaintiff made an offer that the witness would testify that the injuries then complained of

"were all on the left side of the face and not on the right side." Dr. Kuntz had testified that he had attended plaintiff in 1928 and that the plaintiff told him at the time that he had been struck in the right eye while riding on a street car on October 9th, 1928. The object that struck him was a limb of a tree which was "extending from a landscape wagon".

The plaintiff testified that Dr. Kuntz had not treated his right eye in 1928 but had treated his left eye. Therefore, the question of whether the left eye or the right eye had been injured in 1928 was a fact in issue and when the man who had been plaintiff's counsel in the action based on the 1928 injury, offered to testify after refreshing his recollection by consulting his files, his primary knowledge of the inquiry being based on seeing the plaintiff at that time and on the statement of claim that he, the attorney, drafted at that time, the evidence should have been admitted. The court erred in stating that this testimony was "purely hearsay and not rebuttal". It was *not* hearsay because it was based upon the witness' own observation, as recorded by him in his files of the case, and it was clearly in rebuttal of the testimony of Dr. Kuntz. A witness may use a book or memorandum for the purpose of refreshing his memory even though the writing itself would not be competent evidence: *Babb v. Clemson,* 12 S. & R. 328; *Selover v. Rexford,* 51 Pa. 308, 310; *Gilmore v. Wilson,* 53 Pa. 194, 197; *First National Bank v. Bank,* 114 Pa. 1, 8, 6 A. 366; *Clark v. Traction Co.,* 210 Pa. 636, 639; 60 A. 302. A proper foundation for the admission of the secondary evidence must be laid by showing the witness had some knowledge of the events at the time they took place and must be certain that the writing correctly recites those events: *Com. v. Roth,* 71 Pa. Superior Ct. 71, 74; *Sabin v. Michaelsen,* 72 Pa. Superior Ct. 226, 229; *Ramstein v. B. & L. Asso.,* 65 Pa. Superior Ct. 190, 193. This assignment of error is sustained.

The fifth assignment of error is based upon the court's rejecting an offer of a portion of the testimony which

had been given at a previous trial of the same case by a witness for the defendant, the witness having died since the former trial. At the trial now being reviewed, the defendant witness, Jozefcik, testified that after the accident, he had removed the fare register rope involved in this case, at the request of the foreman, and that the rope did not have any steel nut on the end of it. His testimony that it was he who removed the rope was in contradiction to the testimony of A. D. Bramwell, a witness called by the defendant in the first trial of this case in May 1943. Bramwell testified that he had taken the fare cord off that car. If his testimony was credited by the jury, it would tend to discredit Jozefcik as a witness. The trial judge excluded the notes of Bramwell's testimony on the ground that it was "not rebuttal" and because Bramwell was not called as a witness at this trial. In the opinion filed in this case, the trial judge said: "Jozefcik could not have been bound by what Bramwell stated." When one party calls a witness to contradict the opposing party's witness on a material matter, the fact that the witness contradicted is "not bound" by the contradicting witness' testimony is wholly amiss. It is for the jury to decide which witness is telling the truth.

The admissibility of a deceased witness' testimony under circumstances such as were present in this case is based on the Act of May 23, 1887, P. L. 158, Sec. 9, 28 P.S. § 327, which provides as follows: "Whenever any person has been examined as a witness in any civil proceeding before any tribunal of this commonwealth . . . if such witness afterwards die . . . and if the party, against whom notes of the testimony of such witness are offered, had . . . an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witness shall be competent evidence in any civil issue which may exist at the time of his examination, or which may be afterwards formed between the same parties and involving the same subject-

matter as that upon which such witness was so examined." The notes of the testimony at the former trial of the same case of the deceased witness, Bramwell, if properly proved were admissible. *First National Bank of Easton v. Wirebach's Executor*, 106 Pa. 37; *Molloy v. United States Express Company*, 22 Pa. Superior Ct. 173. *Almar Building & Loan Ass'n v. Broad St. Trust Co.*, 116 Pa. Superior Ct. 465. The fifth assignment of error is sustained.

The sixth assignment is based on the admission of the testimony of Dr. Kuntz to the effect that the "condition from which plaintiff suffers today could have originated in the accident of 1928". The admission of this testimony was error and the assignment is sustained. In *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 206, 133 A. 256, this court said: ". . . The witness would have to testify, not that the condition of claimant might have, or even probably did, come from the accident, but that 'in his professional opinion the result in question came from the cause alleged'; for, according to our latest pronouncement on this subject, a less direct expression of opinion would fall below the required standard of proof, and therefore would not constitute legally competent evidence." This rule of law is applicable not only to compensation cases but to actions at law: *Fink v. Sheldon Axle & Spring Co.*, 270 Pa. 476, 113 A. 666.

The seventh assignment of error was based on the court's over-ruling an objection to plaintiff being cross-examined in regard to a settlement he had made with the defendant company for injuries he claims then to have sustained while a passenger on the defendant's street car in October 1928. This cross-examination was highly improper. It was germane to nothing testified to on direct examination and it was harmful. This assignment of error is sustained.

Though the matter is not properly assigned for error, the record discloses that the trial judge stopped plaintiff's counsel during the latter's opening address to the

jury as he was stating what he "intended to prove." While the addresses of counsel either in "opening" or "closing" to the jury, are subject to the restraint of the trial judge, should the opening address become argumentative in character or should either address transcend the bounds of professional decorum or be unreasonably lengthy, it must be kept in mind by those who preside over our courts that just as in criminal cases it is the constitutional [1] right of every accused "to be heard by himself and his counsel", so likewise in *civil* cases, a litigant's right to be fully represented by counsel is an integral part of that "due process of law" which every resident of this state and nation whose legal rights are being adjudicated can freely invoke.

The judgment of the court below is reversed with a venire.

---

[1] Art. 1, Sec. 9 of the State Constitution. See *Com. v. Brown,* 309 Pa. 515, 164 A. 726.