Schwartz, Appellant, *v.* Feldman.

Argued September 14, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, and MONTGOMERY, JJ. (RHODES, P. J., and FLOOD, J., absent).

Before FLOOD, J.

*David H. Kubert,* with him *Norman Shigon,* for appellant.

*Howard M. Girsh,* with him *Manuel Steinberg,* for appellee.

OPINION BY WOODSIDE, J., November 16, 1961:

This is an appeal by the plaintiff in a trespass action from a judgment entered in her favor after the court below refused her motion for a new trial.

The action grew out of an automobile accident on the Tacony-Palmyra Bridge on June 9, 1956. The defendant, Alex Feldman, asked the plaintiff, Sophie Schwartz, a widow, to take a ride with him to New Jersey. While crossing the bridge the car in front of Feldman stopped suddenly, and his car ran into it. In this appeal we are concerned only with the damages for the plaintiff's personal injuries. When the cars collided the plaintiff was thrown against the dashboard and injured her teeth and nose and suffered a cut lip. She also received a bump on the head and injured her neck and back. She was taken to the hospital, but was discharged two hours later.

A few days after the accident she visited a physician who thereafter treated her 42 times, mostly for her

neck and back injuries, and finally discharged her on August 1, 1957. In the meantime (June 1957), she was again injured in an automobile accident while riding in a car with Feldman. Before trial she was injured in a third motor vehicle accident. In all three, she suffered head injuries.

At the time of the trial, the plaintiff had a serious hearing deficiency requiring her to use a hearing aid. The most important factual question remaining in this case is whether there was any causal connection between the first accident and the hearing deficiency.

The jury returned a verdict of $1174 in favor of the plaintiff. If the plaintiff's loss of hearing was caused by the first accident, the verdict is inadequate; if it was not, the verdict is adequate. The plaintiff offered evidence of special damages amounting to $724.50. Of this amount, all except $174 was connected with the loss of hearing. It would appear from the amount of the verdict that the jury rejected the claim for loss of hearing, and allowed the plaintiff's claim for other expenses, plus $1000 for pain and suffering.

The trial court saw no merit in the motion for a new trial. The refusal of the trial court to grant a new trial for inadequacy of verdict will not be disturbed by the appellate courts unless there is a clear abuse of discretion. *Nark v. Horton Motor Lines, Inc.,* 331 Pa. 550, 1 A. 2d 655 (1938); *Kuhns v. Brugger,* 390 Pa. 331, 135 A. 2d 395 (1957).

The basic issue presented here, as we view it, is whether the court below should have concluded that the jury was guilty of a capricious disregard of competent testimony on the ground that it rejected the plaintiff's opinion evidence concerning the cause of her loss of hearing.

The appellant argues that the plaintiff's evidence establishes the causal connection between the hearing loss and the accident, that it is uncontradicted, and

that the jury was guilty of a capricious disregard of competent evidence by failing to accept it.

In order to sustain an award of damages, the expert must testify, not that the condition of the claimant might have, or even probably did, come from the accident, but that in his professional opinion the result in question came from the cause alleged. *Menarde v. Philadelphia Trans. Co.*, 376 Pa. 497, 501, 103 A. 2d 681 (1954). As stated in *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 206, 133 A. 256 (1926), "a less direct expression of opinion would fall below the required standard of proof, and *therefore* would not constitute legally competent evidence." (Emphasis supplied). See also *Nestor v. George*, 354 Pa. 19, 24, 46 A. 2d 469 (1946). The plaintiff's evidence would sustain a verdict for loss of hearing if the jury had believed the testimony of the plaintiff's medical expert, but the jury is not required to believe all uncontradicted evidence. 15 P.L.E., Evidence, §445; *Karcesky v. Laria*, 382 Pa. 227, 234, 114 A. 2d 150 (1955); *Zilek v. C. C. Coal Co.*, 186 Pa. Superior Ct. 628, 631, 142 A. 2d 507 (1958).

It appears from the above cases that a jury would *not* be guilty of a capricious disregard of competent evidence by disbelieving a plaintiff's positive unimpeached opinion evidence. But we need not rest this decision on such a holding. The opinion evidence offered by the plaintiff was not unimpeached; it was sufficiently shaken by the defendant's expert to permit the jury to reject it.

The plaintiff and the defendant each called a reputable ear, nose and throat specialist to give expert medical testimony. The two physicians agreed from their examination that the plaintiff was suffering from a marked hearing loss, and that it was necessary for her to use a hearing aid in order to understand normal conversation. They also agreed that an examination of

her ears showed scars on both ear drums which indicated perforations with healed membrane, thus establishing that the plaintiff had ear trouble of long standing.

Dr. Maurice Saltzman testified on behalf of the plaintiff that she first consulted him on September 29, 1956, and that based upon the history of the case and the tests which he and others made, he was of the opinion that she suffered a cranio-cerebral trauma in the accident of June 9, 1956, and that the nerve mechanism of the inner ear and its connections were adversely affected, producing the deafness which he found in the plaintiff. He said that the previous perforations of her ear could not produce loss of hearing to the degree suffered by the plaintiff. He said that the plaintiff's equilibrium mechanism was affected by the blow on the head which she had received in the accident and that the condition produced by the trauma was permanent. He also stated that there is a "time delay" between the blow and the development of the condition from which the plaintiff is suffering. (The plaintiff did not complain of her hearing when she went to a physician for treatment of her injuries four days after the accident.)

Dr. Karl M. Houser testified that he examined the plaintiff on behalf of the defendant and that she had marked hearing loss. He testified that perforations such as those suffered by the plaintiff prior to the accident give rise to hearing loss and that he had patients with healed perforated drums whose hearing loss was as great as that of the plaintiff. He testified that the type of dizziness described by the plaintiff did not coincide with his idea of aural vertigo. He testified that in his opinion it required a much more severe blow on the head than was suffered by the plaintiff in this case to cause the condition from which she was suffering. He further testified that there was no "time de-

lay" between a blow on the head and a hearing loss caused by the blow. He also testified that it was impossible for any expert to tell whether any additional loss of hearing was caused by the accident. While on cross-examination, he testified that he would "stand on . . . what appears to me to be the cause of [the hearing loss]." He said that he highly regarded Dr. Saltzman's opinion, but disagrees with him when he says the hearing loss is due to the accident.

The appellant argues that Dr. Saltzman's opinion was uncontradicted, and that Dr. Houser merely said he could express no opinion as to the cause of the plaintiff's loss of hearing or its connection with the accident.

We do not so read the testimony. Dr. Houser did not categorically state that in his opinion the accident did not contribute to the plaintiff's loss of hearing, but he expressed his opinion that the type of dizziness described by the plaintiff did not coincide with aural vertigo, that a more severe blow on the head than suffered by the plaintiff was necessary to produce hearing loss, and that no "time delay" exists between a blow on the head and hearing loss therefrom.

The testimony of Dr. Houser was relevant and threw sufficient doubt upon the testimony of Dr. Saltzman to permit the jury to conclude that the plaintiff had not met her burden to prove that there was a causal connection between the hearing loss and the accident.

The plaintiff's expert expressed an opinion that there was causal connection between the accident and the loss of hearing. The appellant argues that this opinion can be attacked by the defendant's expert only by his expressing an opinion that there was no causal connection between the accident and the loss of hearing. The opinion of the plaintiff's expert was the result of certain deductions. The defendant's expert could testify that in his opinion the deductions of the

plaintiff's expert were erroneous. When an expert expresses an opinion, it is within the discretion of the trial judge to permit another expert to be called to show that the facts do not support that opinion, and that no positive opinion can be properly found from the available facts. See III Wigmore on Evidence (3rd Edition) §992(2). Of course, the jury could have believed the plaintiff's physician, but the opinions of the defendant's expert was admissible to aid the jury in determining the weight to be given to the opinion of the plaintiff's expert.

It was for the jury to determine the extent of the plaintiff's injuries, and it was for it to decide whether there was any causal connection between the accident and her loss of hearing.

The appellant argues that certain rulings on evidence and certain remarks of the trial judge entitle him to a new trial. We have read the record and examined the contentions and find no merit in them.

Judgment affirmed.

FLOOD, J., took no part in the consideration or decision of this case.