## Johnson et al. *v.* Freemann, Appellant.

[Marked to be reported.]

*Contract—Guaranty—Building Machine—Evidence.*

Plaintiffs agreed to build for defendant a machine "as per drawings and specifications" furnished by defendant. Plaintiffs did not guarantee that the machine would do the work that it was intended to do. After the patterns had been examined, it was found that they were incomplete, and that the drawings relating to the locomotive part of the machine were defective. Plaintiffs then undertook, at defendants' request, to furnish revised drawings and patterns to correct the imperfections. When the machine was completed, it was found that it would not do the work contemplated. *Held* that the agreement of plaintiffs to furnish the revised drawings and specifications did not operate to change the contract so as to make them responsible, if the finished machine did not do its work satisfactorily as a machine.

*Damages—Imperfect machine—Charge of court.*

In an action to recover the price of a machine where defendant claims that the machine was imperfect, it is not improper to charge on the question of damages that "if the defects are due to imperfect workmanship on the part of the plaintiffs, or to any want in the materials which they used in the construction of the machine, or if the parts which they were to de-

sign, and did design and construct, were not reasonably suitable for the purposes for which they were intended, the defendant would be entitled to deduct from the claim of the plaintiffs such an amount as he would be required to expend in repairs in putting the machine in the condition which was arranged for in the plans and designs. He would be further entitled to deduct from that claim the necessary expenses to which he has been put which were a result of those defects."

Argued Jan. 3, 1894. Appeal, No. 375, Jan. T., 1893, by defendant, J. S. Freemann, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1885, No. 298, on verdict for plaintiffs, Israel H. Johnson, Jr., et al., trading as Israel H. Johnson & Co. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for work, etc. Before PENNYPACKER, J.

At the trial, it appeared that, on Jan. 15, 1885, at defendant's request, plaintiffs made the following proposition in writing:

" We propose to build for you one Johnson's Patent Street Paving Ramming Machine complete, with boiler and engine, as per drawings and specifications, for the sum of $1,650, exclusive of patterns, which are to be furnished to us; $500 in cash to accompany the acceptance of our proposition; $325 cash Feb. 10, 1885, and balance, $825, to be paid on completion of machine in cash, or three and four months' notes, with interest and satisfactory indorsements. Walker did not get his patterns here to-day. As soon as they arrive we can give estimates for balance of patterns."

A day or two after this proposition was made, and after the patterns had been examined, it was found that they were incomplete, and that the drawings relating to the locomotive part of the machine were defective. Defendant then called on plaintiffs and was informed of these facts. He then informed plaintiffs that they should carefully examine all the drawings and specifications, and if there was anything imperfect or defective, to correct it.

Plaintiffs then made the following proposition, which was accepted:

" We revise our bid of 15th by proposing to build for you one Johnson's Patent Street Paving Rammer, including revised

drawings and patterns, for the sum of eighteen hundred and fifty dollars ($1,850), to be completed in about eight weeks, and paid for as follows: $500 cash, with acceptance of proposition; $425 cash, Feb. 10, 1885, and balance $925 to be paid on completion of the machine, in cash or three and four months' notes, with interest and satisfactory indorsements. We will submit the drawings to you for approval soon as ready."

Wilson C. Walker was to have an interest in the patent if the machine worked.

Defendant testified that plaintiffs guaranteed the work and materials but did not guarantee that the machine would do the work which it was designed to do. Defendant further testified that the machine as constructed by plaintiffs would not work satisfactorily, owing to defective workmanship in its construction by plaintiffs.

Plaintiffs' claim was on a promissory note for $475, with interest from Dec. 19, 1885, and a book account in 1885 for $356.63.

The court charged as follows:

" [Under the terms of the contract it became the duty of the plaintiff to construct the machine not in such a way as to make it perform the work which was expected of it, but according to the plans and specifications which were furnished.] [1]

"As to whether it was so constructed is the main question of fact which you are called upon to determine in the case. It appears that this machine consisted of two parts. There was a rammer by which the stones in the street were to be hammered down and rammed, and there was a locomotive part or motive part, the object of which was to move the machine about the streets in the performance of the work it was intended to do.

"With respect to the ramming part of the machine, the defendant contends that there were certain defects in the way in which the work was done, and it has been testified to you, by his witnesses produced before you, that in those respects that part of the machine was defective; the work was not done in a workmanlike manner. The first defect which they allege is that the port hole through which the steam was admitted into the cylinder was to some extent—about two thirds of the space according to the testimony of one witness—closed by a web of

iron. It was testified to you that some time was spent in endeavoring to find out where the trouble lay, and that finally, by drilling into the cylinder, this web of iron was removed. It took a half hour to chip it out when it was found, and about half a day was spent in taking the machine apart. But according to this evidence the web was found there, and it is alleged to have been a defect in the construction. On the part of the plaintiffs the men who worked upon the machine have been produced. Some of them have said they examined the casting and found no such web, and one testified to you if it had been there at the time the work was done he would have found it.

" Another defect which has been alleged is that three eighths of an inch was cut away from the top of the piston rod. I believe it is not denied that that was done, but the plaintiffs tell you that that was rendered necessary by the fact that an accident happened to the piston rod after the machine had left their control, and that because of that accident it became necessary to cut away that part of the rod.

" The third defect which is alleged on the part of the defendant with respect to this part of the machine is that in the space which was cut away from the yoke certain pieces were inserted, which are called 'dutchmen,' and it is alleged on the part of the defendant that that was not good workmanship. The plaintiffs, however, tell you that those 'dutchmen' were inserted because it was found necessary, after the machine had been constructed, to reverse the motion and turn around the piston, and that this rendered necessary the cutting away of certain portions of it, and the insertion of these pieces. They further say to you that it was no detriment. This is substantially the testimony with respect to the ramming part of the machine.

" Now, there was the other part of the machine, the motive part. The defendant testifies to you that between the time of the first proposition which was made, and before the making of the second proposition on the 19th of January, 1885, he saw the plaintiffs and told them that the difference between the old machine and the one they were to construct was in the locomotive part; that in the old machine there was a difficulty in moving; that he told them to find out what was needed and to prepare what was wanting. I do not remember that there is any contradiction of this statement in the evidence presented before

you.   To a certain extent there is an admission of it on the part of the plaintiffs.   They say that the plans and the patterns which were submitted were not complete, that there were parts that were missing, and these parts were to be designed by them. Mr. Joshua R. Johnson, in telling what they did design and construct in accordance with that design, says that they made the stand to hold the cylinder or the guides for the cross heads, that they added a stand to fasten both cylinders to, that they designed the frames which held the cylinder.   He also, in the evidence which was presented in a former trial, said that they prepared the motive power for driving it around the streets in accordance with the plans which they have produced, and he concedes, in the testimony which he has given before you, that that is correct.

" Now, if that was the arrangement, as told by the defendant, and it has not been disputed, it ought to receive a reasonable construction.   [If the defendant is to contend that the plaintiffs were to build an entirely new motive part to suit this machine, it ought to appear clearly before you that that was the understanding and agreement made between the parties. The written propositions do not so state, and I do not remember any evidence in the case which would justify you in so finding. The contract should be reasonably construed, and it means—it is my duty to tell you what it means—that it was the duty of the plaintiffs to examine that motive part, and if they found that there were parts missing, or parts defective, to design them and construct them.] [2] The parts which they were to so design and construct ought to be adapted to the other parts of the machine, and should be so designed and constructed that they would reasonably answer the purpose for which they were intended.

" With respect to the motive part of the machine, Mr. Mendham says that there was a miscalculation of the rate of speed, that the movement was too fast for the machine, and Mr. Berry testifies that the locomotive part was not constructed for the purpose intended, that there was no brake appliance, that the crank shaft was too light.   You have also heard—and I do not propose to go over it at any length—the evidence as to the fact that this machine when it went out on the street met with many mishaps and encountered a number of breaks.   It is not dis-

puted that in many of its parts the machine did break. The plaintiffs allege that it was constructed according to the plans and designs that were furnished. About the brake appliance, they produce testimony to show to you that it was not on the plans which were furnished to them, and that the crank shaft was made in accordance with those plans.

"It is for you to say whether the breaks which occurred, and the difficulties that arose when the machine was taken out for use, were due to inherent defects in the plans and patterns which were furnished, or whether they were due to the lack of proper workmanship on the part of the plaintiffs, or due to some want of skill in the parts designed by them, or in the construction of those parts. If the defects are due to imperfect workmanship on the part of the plaintiffs, or to any want in the materials which they used in the construction of the machine, or if the parts which they were to design, and did design and construct, were not reasonably suitable for the purposes for which they were intended, the defendant would be entitled to deduct from the claim of the plaintiff such an amount as he would be required to expend in repairs in putting the machine in the condition which was arranged for in the plans and designs. He would be further entitled to deduct from that claim the necessary expenses to which he has been put which were a result of those defects. The amounts have been testified to you which he claims to deduct, and you have them before you. [If the machine was constructed according to the plans and specifications which were furnished, with proper material, and the workmanship was of a reasonably suitable character, and if the parts designed by the plaintiffs were fit for the purpose for which they were intended, then the plaintiff is entitled to recover in this suit.] " [3]

Plaintiffs' points were among others as follows:

"1. If the jury find that the machine was constructed in accordance with the drawings submitted to and approved by the defendant and Walker, and the drawings and patterns furnished by defendant and Walker, with proper materials and in a workmanlike manner, then your verdict should be for the plaintiffs. *Answer:* I affirm that point, if they were so submitted and approved." [4]

"2. If the jury find that the repairs to the machine were

made for the defendant, and that they were not made necessary by defective workmanship or improper materials used in the construction of the machine, or by a failure on plaintiffs' part to construct the machine in accordance with the drawings and patterns furnished and approved by defendant and Walker, then your verdict should be for the plaintiffs. *Answer :* I affirm that point, if the drawings and patterns were furnished and approved." [5]

Defendant's points were among others as follows :

" 3. That defendant is entitled to set off against plaintiffs' claim all direct loss that he has sustained on account of the defective and unworkmanlike manner in which said machine was constructed, if the jury shall find that the work was defective." Refused. [6]

" 6. If the jury find all the disputed facts in favor of the defendant they should render a verdict in his favor with a certificate for the amount paid by him to plaintiffs, and such sums as he has necessarily expended in endeavoring to put said machine in the condition in which it should have been put by plaintiffs." Refused. [7]

Verdict and judgment for plaintiffs for $785.43.

*Errors assigned* were (1–7) instructions, quoting them.

*Alex. Simpson, Jr., John S. Freemann,* with him, for the appellant.—By the terms of the second proposition, which must be read in connection with what transpired between the parties in the meantime, plaintiffs agreed not only to supply missing parts, but to revise the drawings, so that the machine constructed by them would be a complete piece of machinery, and adapted to the work it was intended to do. Plaintiffs were not expected to change the general plan and design of the machine, but they did undertake to adapt the various parts of the machine to each other, so that when it was completed it would be a perfect working piece of machinery.

Defendant at no time contended that it was the duty of plaintiffs to construct an entirely new motive power. It appears from the evidence that this question never arose. What defendant did expect, and what he contended for before the jury, was that plaintiffs had undertaken to furnish him with a machine, in which the locomotive part was entirely adapted to the purpose of the machine.

That the written contract between plaintiffs and defendant should be construed in the light of the conversations between the parties at the time it was made has been clearly decided by this court in the case of Dubois v. Bigler, Young & Co., 95 Pa. 200. The principal facts in that case are very similar to those in the case at bar.

The court erred in refusing to charge as to the measure of damages in accordance with defendant's points: Pennypacker v. Jones, 106 Pa. 237.

*Hood Gilpin,* for appellees.—Taking the whole of the learned trial judge's charge, and not extracts from it, it will be seen that the evidence was fairly submitted to the jury, and, in view of the contradictory evidence, it was certainly a case for the jury.

In Dubois v. Bigler, Young & Co., 95 Pa. 203, cited by appellant, the contract was in writing, and by it plaintiffs below agreed to build and deliver to defendant below two finished engines, to be placed as shown in a set of drawings furnished by plaintiffs, who guaranteed the materials, workmanship and working of said engines in every respect as first class and satisfactory to defendant; the engines when set up to constitute everything necessary to make them complete, both as to appearance and capacity. This is a very different contract from the one in the case at bar. Plaintiffs, according to the undisputed testimony on both sides, declined to guarantee the operation of the machine; they knew the class of work the machine was intended to do, which was the very reason of their refusal.

In Pennypacker v. Jones, 106 Pa. 237, there was also an express written warranty of the machine, viz.: that the mill should have the capacity not below two hundred barrels daily, with full modern percentages of high grades flour equal in quality to the best in the market, that the builders would "complete and start everything complete and show satisfactory results, as above stated," etc. They further agreed, in writing, that "this should be no experiment," etc.

OPINION BY MR. JUSTICE GREEN, March 19, 1894:

The learned court below charged the jury as follows: "It is for you to say whether the breaks which occurred and the diffi-

culties that arose when the machine was taken out for use, were due to inherent defects in the plans and patterns which were furnished, or whether they were due to the lack of proper workmanship on the part of the plaintiffs, or due to some want of skill in the parts designed by them or in the construction of those parts.  If the defects are due to imperfect workmanship on the part of the plaintiffs or to any want in the materials which they used in the construction of the machine, or if the parts which they were to design, and did design and construct, were not reasonably suitable for the purposes for which they were intended, the defendant would be entitled to deduct from the claim of the plaintiffs such an amount as he would be required to expend in repairs in putting the machine in the condition which was arranged for in the plans and designs.  He would be further entitled to deduct from that claim the necessary expenses to which he has been put which were a result of those defects.  The amounts have been testified to you, which he claims to deduct, and you have them before you.  If the machine was constructed according to the plans and specifications which were furnished, with proper material, and the workmanship was of a reasonably suitable character, and if the parts designed by the plaintiffs were fit for the purpose for which they were intended, then the plaintiff is entitled to recover in this suit."

The defendant being examined as a witness on his own behalf, testified as follows, inter alia, viz.: " Q. And as another thing you do not pretend to say that the plaintiffs guaranteed this machine would do the work which it was designed to do ? A. They did not guarantee that. . . . Q. No such undertaking on their part that the machine would be successful so far as the paving the street went?  A. No.  Q. That was the object you had in making the patent, and they did not guarantee it?  They simply guaranteed the work and the materials?  A. That is all."

The contract between the parties was in writing in the form of two proposals, the material parts of which are: First.  "We propose to build for you one Johnson's Patent Street Paving Ramming Machine complete, with boiler and engine, as per drawings and specifications, for the sum of $1,650, exclusive of patterns which are to be furnished to us."   Second.  " We re-

vise our bid of 15th by proposing to build for you one Johnson's Patent Street Paving Rammer, including revised drawings and patterns, for the sum of $1,850."

The occasion of the revised bid was that a day or two after the first bid, and after the patterns had been examined, it was found that they were incomplete and that the drawings relating to the locomotive part of the machine were defective. The defendant called on the plaintiffs and was then informed of these facts. "He then informed the plaintiffs that they should carefully examine all the drawings and specifications, and if there was anything imperfect or defective, to correct it. . . . He then requested them to send him another proposition covering everything needed to construct a complete machine suitable for the work for which it was to be used." The foregoing quoted statements are taken from the defendant's history of the case.

As will be seen by the above quoted portion of the charge, the court below instructed the jury that " if the defects are due to imperfect workmanship on the part of the plaintiffs, or to any want in the materials which they used in the construction of the machine, or if the parts which they were to design, and did design and construct, were not reasonably suitable for the purposes for which they were intended, the defendant would be entitled to deduct " etc.

This portion of the charge is not assigned for error, and it certainly seems to us to express the full measure of the plaintiffs' obligation under the contract. According to the defendant's personal testimony the plaintiffs did not guarantee, and were not asked to guarantee, that the machine when constructed would do the work for which it was made. The plans and specifications were to be furnished and were furnished by the defendant. When it was found they were imperfect in some respects, the plaintiffs undertook to furnish revised " drawings and patterns," to correct the imperfections, and did so, and as to these the charge of the court below held them liable if they were not reasonably suitable for the purposes for which they were intended. We are unable to hold, as is claimed for the defendant, that the words " including revised drawings and specifications," in the second bid, operated to change the contract so that the finished machine should do its " work satisfac-

torily as a machine." The revised drawings and specifications were only rendered necessary by the imperfect condition of the drawings and patterns that had been furnished by the defendant. It was merely to supply those defects that the plaintiffs undertook to furnish such as were needed. We cannot consider that this undertaking sufficed to change the whole nature of the contract. The case of Dubois v. Bigler, Young & Co., 95 Pa. 203, was entirely different from this. There the contractor was to furnish all the drawings for the engines, and guaranteed that the materials and working of the engines should be first class and satisfactory to the purchaser, and the decision was put upon that ground. Thus Mr. Justice TRUN-KEY, delivering the opinion, said: "The engines and fixtures were for a particular purpose, to be made and placed by plaintiffs according to their drawings and specifications, the working of which was guaranteed to be first class and satisfactory. Materials, workmanship and plan were embraced in the engines and fixtures, which were warranted to do good work as the motive power for a large sawmill. . . . The plaintiffs contracted for the successful working of the machinery and are liable for its failure, unless success was prevented or hindered by the act or default of the defendant." All of these important and controlling features are absent from the present case. We think the case was correctly tried by the learned court below. The instructions as to damages are not important in this view of the case, but, if they were, we think they are correct.

Judgment affirmed.