# Reach *v.* National Bedding Co., Appellant.

*Contract—Sale—Written agreement—Oral contract — Warranty
—Breach—Evidence—Short weight—"Net weight"—Trade custom
—Self-serving evidence.*

1. In an action to recover back part of purchase money on 30,000 pounds of ticking sold and delivered where the claim is based on cost of washing and on loss of weight on 10,000 pounds, which plaintiff claims was sold under a separate parol contract, by which he had no opportunity to inspect the goods, the case is for the jury where the evidence shows that 20,000 pounds were sold under a written contract providing for previous inspection, and where conflicting testimony tended to show that 10,000 pounds were sold under an oral contract which provided for its washing, and by which plaintiff had no previous opportunity of inspection for weight.

2. In such case, where a letter relating to the 10,000 pounds had been received and replied to before such lot had been shipped, such letter cannot be said to be self-serving.

3. Where a seller agrees to do an act with reference to a specified lot of goods before delivery, the purchaser has the right to recover the cost incurred in having done what the seller undertook to do. Such case is not a breach of warranty on the part of the seller as to quality.

4. Where the public weigher weighs goods, but they are not shipped for three weeks after the weighing, during which time the public weigher has had no knowledge of their condition, the question of what the weight was when delivered to the carrier, is for the jury.

5. Where plaintiff in such case is permitted to introduce evidence as to the trade meaning of the words "net weight" as used in the contract, but subsequently the court directs the jury to pay no attention to this testimony, and states that the words "net weight" as used in the contract meant exactly what they said, and that a trade meaning for them had no application to the case, defendant has no reason to complain of the admission of the evidence, or the charge on the subject.

*Evidence—Telephone message—Conversation with unidentified person.*

6. It seems that telephone conversations with unidentified persons are admissible in evidence, where circumstances following the

conversation indicate that the person who spoke was speaking with authority.

Argued January 11, 1923.   Appeal, No. 140, Jan. T., 1923, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1920, No. 1893, on verdict for plaintiff, in case of Abraham L. Reach, doing business as A. L. Reach Textile Co. v. National Bedding Co.   Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ.   Affirmed.

Assumpsit to recover back part of purchase money paid for goods.   Before BARTLETT, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $1,887.89.   Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions, appearing by the opinion of the Supreme Court, quoting the record.

*Samuel G. Schwartz,* for appellant.

*James Collins Jones,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, February 19, 1923:

This action was brought by plaintiff to recover back part of the purchase price, paid by him for merchandise bought from defendant and shipped by it to plaintiff, sight draft against bill of lading.   The latter paid the draft, and, upon receipt of the goods, found, so he claimed, they were not in accord with the agreements covering their sale and were short in weight.   The verdict was in plaintiff's favor and defendant has appealed.

The circumstances connected with the transaction between the parties, as disclosed by the record, are that at defendant's place of business they entered into a contract in writing for the purchase of "approximately

20,000 pounds or more of ticking 'as is' at 37½ cents per pound......net weight." When the contract was entered into, the ticking was exhibited to plaintiff, who made an examination of it. Defendant had an additional quantity of the material on hand, about 10,000 pounds, stored at an outside warehouse; this plaintiff did not see. Some conversation took place between appellee and the president of defendant about the purchase of this additional lot, which defendant was not then free to sell because of an outstanding option. Plaintiff testified he told this officer of defendant he desired to buy the 10,000-pound lot and include it with his other purchase in the shipment, but the latter informed him there was a reason additional to that of the existence of the option why he was unwilling to sell it, which was that plaintiff insisted upon its being washed, while he thought it could be sold in the state in which it then was and defendant be saved the trouble of laundering it.

A few days after executing the contract for the 20,000-pound lot, plaintiff received a telephone call from an unidentified person, whom he understood to be a girl in appellant's employ, regarding the additonal 10,000 pounds. She informed him she was speaking from defendant's place of business, that its president was out of town, and had instructed her to say to plaintiff that he could have the balance of the ticking. The latter inquired whether this was the 10,000 pounds at the warehouse to be washed, and was answered that it was; he then told her to hurry it to the laundry and to hold the 20,000 pounds previously purchased and ship the two lots together, which was done, the plaintiff receiving the entire 30,000 pounds in one shipment. In addition to the circumstances here detailed, a letter from appellee to appellant and the latter's reply have a bearing on the controversy. On October 20th, two days after the making of the written agreement, plaintiff wrote defendant, "We would also thank you to let us hear from you regarding the 10,000 pounds which you stated was

at the warehouse *awaiting being sent to the laundry.*" In the following day's answer, defendant did not indicate that the 10,000 pounds was not to be sent to the laundry, simply stating the belief that it would be able to have a solid car shipped, which was not the fact if but 20,000 pounds could be forwarded, as it would not make a carload lot; further, that "the goods we have on hand and which has been weighed totals to 20,615 pounds" and "we believe that we will be able to give you some more of the same goods a little later." This response, in the light of plaintiff's letter, aids the conclusion that it was the understanding of the parties that the additional quantity was to be washed.

The principal question in the case is whether the 10,000 pounds of material was sold under the written contract, or whether it was outside of that contract and the subject of an independent oral agreement. The position of appellant is that it was included in the written agreement and that the effect of receiving parol testimony as to the terms of sale is to vary the writing.

It cannot be successfully maintained that the 10,000-pound lot was included in the first contract; the very words of that paper indicate it was not, as do the expressions in the letters which have been quoted. Furthermore, plaintiff had inspected the 20,000-pound lot and had not seen the other one. The jury, believing plaintiff's statement, had full warrant for finding defendant had expressly excluded the second lot from the contract because of the existing option on it.

The items embraced in plaintiff's claim are the expense of washing the 10,000-pound lot, an allowance for the loss of weight which this caused, and the excess paid to defendant by reason of a further shortage in weight of the merchandise delivered. As both parties contend that the additional lot of 10,000 pounds was to be of the same character as the original quantity sold, and as plaintiff testified that was washed, and the president of defendant that some of it was washed and some not, this dispute

(the contract for the second lot being in parol) was for the jury. That it was plaintiff's understanding that the second lot was to be laundered is borne out by his before-quoted letter, and the statement in this respect was not denied by the reply. It is worthy of remark that when defendant was called upon to reimburse plaintiff for the alleged overpayments made, it set up as the controlling factor against the claim that the ticking had not been washed, that all the material had been examined by the plaintiff and bought "as is." It is not now even asserted by appellant that plaintiff had examined the 10,000-pound lot.

One of the assignments of error raises the question of the admissibility of the correspondence. The only objection made to it was that plaintiff's letter was a self-serving declaration. As it admittedly had been received and replied to before the 10,000-pound lot was shipped, we cannot see how it could be said to be in any sense self-serving; had it been written after the shipment such a criticism might apply.

The interesting question, raised by another assignment of error, whether the telephone conversation between the girl, she being unidentified, and plaintiff was admissible in view of the fact that the material, the subject of the conversation, was subsequently shipped to plaintiff, need not be passed upon, because defendant did not object to the conversation on the ground that the person engaging in it was not identified, but for the reason that it was an attempt to vary the terms of the written contract, which, in our view of the case, it was not. It may, however, not be amiss to point out, that telephone conversations with unidentified persons have been received in evidence, where circumstances following the conversation indicate that the person who spoke was speaking with authority: 22 Corpus Juris 193; 1 Ruling Case Law 477. Save for the telephone conversation, there is no explanation of the shipment of the 10,000-pound lot.

Whether, under the terms of the parol contract covering the 10,000-pound lot, it was to be washed before shipment, and, having been shipped unwashed, whether plaintiff was entitled to recover the cost of having it laundered and for the resulting shrinkage in weight, was necessarily for the jury. Under plaintiff's version of what occurred with reference to this part of the material, we have not a case of breach of warranty on the part of the seller as to the quality of the material, but a failure on its part to do something in connection with the merchandise which it undertook to do before delivery. The additional expense put upon plaintiff in having it washed, and its loss of weight, were proper elements for him to recover if the jury credited his version of the transaction, as their verdict establishes they did: Johnson v. Freemann, 160 Pa. 317; Williston on Sales, section 614; Stillwell & Bierce Mfg. Co. v. Phelps, 130 U. S. 520; Sticker v. Overpeck, 127 Pa. 446.

In addition to being permitted to recover for the cost of washing the material and the loss of weight consequent thereon, plaintiff had included in its verdict an allowance for shortage in weight amounting to 915 pounds. The contention of appellant is, that it was error to permit a recovery for this item, because it was not shown that the weight of the materials when delivered to the carrier was not as billed by appellant. It depended for establishing the accuracy of the weight on the testimony of a public weigher, who weighed the materials on October 10th. They were not delivered to the carrier until October 28th and the public weigher had no knowledge of what happened to the goods in the meantime. According to the bill of lading, the weight of the shipment was as claimed by plaintiff. Under the evidence, the question of the weight when delivered to the carrier was for the jury.

There was a question raised by plaintiff on the trial as to the trade meaning of the words "net weight" as used in the contract. Testimony was received to estab-

lish their trade meaning, but in the opinion of the court, the evidence was not sufficient to establish such a meaning; he, therefore, directed the jury to disregard this testimony. Appellant has no just cause to complain of the admissibility of the evidence, which was ultimately held insufficient, or of the charge on the subject, which fully protected its rights, the court having instructed the jury, that the words "net weight," as used in the contract meant exactly what they said, and that a trade meaning for them had no application to the case.

We discovered no reversible error in the record and the judgment is affirmed.