## Insurance Department v. Sneyd

*J. Webster Jones*, for appellant.

*James S. Feight* and *John A. Skelton, Jr.*, for Insurance Commissioner.

SOHN, J., December 14, 1953.—This case comes before the court as an appeal from the adjudication of Artemas C. Leslie, Insurance Commissioner of the Commonwealth of Pennsylvania, dated May 6, 1953, imposing a penalty of $50 upon respondent, Earle C. Sneyd, a licensed insurance agent and broker, after a hearing, under the authority of section 639 of the Insurance Department Act of May 17, 1921, P. L. 789, as last amended by the Act of May 9, 1949, P. L. 951, 40 PS §279.

The records of the Insurance Department show that respondent, Earle C. Sneyd, is at the present time licensed as an agent for the following companies: Philadelphia Life Insurance Company, Bankers Security Life Insurance Society, the Automobile Insurance Company of Hartford, Conn.; Universal Insurance Company, Insurance Company of North America, Union Insurance Society of Canton, Limited. Appellant also holds broker's license no. 6802 for fire and casualty authorities.

On July 21, 1952, a letter was addressed to Earle C. Sneyd, trading as Sneyd Underwriters Company, and personally served upon respondent, advising him that a hearing was fixed for Wednesday, August 6, 1952, at 10 a.m. in Room 200 City Centre Building, 121 North Broad Street, Philadelphia, to consider his conduct as agent and broker. In this letter he was generally charged with violation of section 639 of the Insurance Department Act of 1921, as amended, in that he had evidenced such conduct as would disqualify him as an agent or as a broker from initial issuance of a license and that he was unworthy of a license. He was particularly advised in the letter that certain allegations concerning his conduct would be considered at the hearing. These allegations were set forth in eight numbered paragraphs and charged him with failure to note on a change of car endorsement an encumbrance on the car to be insured and this neglect on his part was the basis of the refusal of payment of a subsequent claim by the insurance company.

The hearing was continued from time to time but was finally held on Wednesday, December 17, 1952, at 10 a.m. at the place mentioned in the original notice. The hearing was conducted by the hearing officer for the department and the department was represented by counsel. Respondent appeared in person, accompanied by his attorneys. The insured likewise appeared in person and with his counsel. The testimony was taken down stenographically and later transcribed. The hearing officer afforded counsel for respondent an opportunity to submit briefs; this, however, was declined. A copy of the hearing officer's letter and a copy of the reply thereto are attached to the adjudication and record.

The relevant facts appear in the adjudication as follows:

1. That respondent, Earle C. Sneyd, holds licenses as insurance agent and as insurance broker under the Insurance Commissioner.

2. That as agent of the Commonwealth Mutual Fire Insurance Company of Pennsylvania (hereinafter referred to as Commonwealth Mutual), he accepted an application from Pennsylvania Truck Sales Corporation (hereinafter referred to as Truck Sales Corp.) and delivered an automobile physical damage policy no. 19190 of the Commonwealth Mutual dated December 19, 1951, affording comprehensive coverage only on a certain 1942 model Lincoln sedan automobile written to the Truck Sales Corp. as owner and lessor and to William Casper Kobierowski as purchaser and lessee, on which policy there was noted an encumbrance of $242.74 in favor of the Truck Sales Corp.

3. That thereafter on or about January 16, 1952, the insurance so afforded was transferred to a 1947 Chevrolet club coupe and collision coverage added by endorsement signed by respondent as agent of the Commonwealth Mutual to be affixed to the policy no. 19190 and on which endorsement was noted an encumbrance of $388.64.

4. That thereafter on or about April 16, 1952, Kobierowski paid off the encumbrance and received from the Truck Sales Corp. the aforementioned insurance policy and endorsement and thereafter Truck Sales Corp. had no right, title or interest in the automobile or the insurance thereon.

5. That at or about that time Kobierowski purchased a 1950 model 2-door sedan Chevrolet from Willard Chevrolet Company, subject to an encumbrance of that company.

6. That on or about April 16, 1952, Kobierowski called the business office of respondent and requested that the insurance then in force under policy no. 19190 of the Commonwealth Mutual be transferred to cover

a 1950 Chevrolet 2-door sedan, serial no. 14HKB35695, purchased April 8, 1952, as a used car at a cost of $1,500, and that there was an encumbrance in favor of Willard Chevrolet Company which should be notified when the transfer of insurance had been effected.

7. That respondent thereupon undertook to transfer the insurance to cover the 1950 Chevrolet 2-door sedan automobile and issued as agent of the Commonwealth Mutual a change of car endorsement dated April 16, 1952 to be attached to policy no. 19190 of that company.

8. That respondent failed and neglected to note on the endorsement the encumbrance of Willard Chevrolet Company or any encumbrance.

9. That respondent failed and neglected to send the endorsement or a copy thereof to Kobierowski or to Willard Chevrolet Company.

10. That respondent thoughtlessly and erroneously sent the endorsement to Truck Sales Corp. although that company was not named as encumbrancer thereon and no encumbrance was noted.

11. That thereafter in May 1952 the Commonwealth Mutual refused to pay a claim under the policy and endorsements for the reason that there was an encumbrance on the automobile in favor of the Willard Chevrolet Company which was not specifically declared and described in the policy, in violation of paragraph (b) of section IX of the policy.

12. That the failure of respondent to note on the change of car endorsement the encumbrance of the Willard Chevrolet Company, or any encumbrance in any amount, and its delivery to Truck Sales Corp. was contrary to good underwriting and business practices and injured the insured.

Appellant has filed 12 separate exceptions to the adjudication of the Insurance Commissioner and we will discuss them in the order in which they have been raised, to wit:

"1. The Insurance Commissioner is not authorized to delegate any hearing to any deputy commissioner or other person."

With respect to this exception, it is only necessary to point out that the Administrative Code of April 9, 1929, P. L. 177, as amended, recognizes the impracticability of any such requirement, providing in section 206 thereof (71 PS §66) that:

"Each administrative department shall have as its head an officer who shall, either personally, *by deputy, or by the duly authorized agent or employe of the department*, and subject at all times to the provisions of this act, exercise the powers and perform the duties by law vested in and imposed upon the department." (Italics supplied).

Subsection (*a*) of this section specifies the officers who shall be the heads of the various administrative departments of the Commonwealth and, among them, designates the Insurance Commissioner as the head of the Insurance Department. It would be rather astounding for us to sustain this exception in the face of such plain, statutory language. To sustain this exception would likewise be to impose upon the Insurance Commissioner a physical burden which no one at the head of such a department could bear. The result would be crippling and disastrous. In the case of McIntosh Road Materials Co. v. Woolworth et al., 365 Pa. 190 (1950), the Supreme Court of Pennsylvania recognized the validity of the foregoing provision and held that the Secretary of Property and Supplies could act effectively through his deputy, or through the Department's assistant director of purchases, in awarding contracts for highway materials.

The second exception:

"2. The said proceeding was without due process, since the Insurance Commissioner did not give written notice stating specifically the nature of the violation

of any of the provisions of sections 604, 607, 623, 631, 632, 633, 634, 635, 636, 637, and 638 of the Act, as required by 40 Purdon Statutes 279, Act of June 22, 1949, P. L. 616, as amended, nor did he specify any conduct under sections 603, 622 or 624 which would disqualify (him) from initial issuance of a license as agent or broker."

This exception is rather hard to understand in view of the record and the testimony. No violation of any of the provisions of sections 604, 607, 623, 631, 632, 633, 634, 635, 636, 637 and 638 of the Insurance Department Act of May 17, 1921, P. L. 789, 40 PS §1, et seq., is alleged and it was, therefore, unnecessary to give appellant any notice with respect to those sections. The notice of the hearing as appears in exhibit 2 specifically states that appellant is "charged with violation of Section 639 of the above Act, as amended, in that you have evidenced such conduct as would disqualify you as an agent or as broker from initial issuance of a license and that you are unworthy of a license."

The notice sent to appellant sets forth in detail, in eight numbered paragraphs, the allegations concerning appellant's conduct to be considered at the hearing. The notice complied with the provisions of section 639 of the Insurance Department Act and the provisions of section 31 of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710-31, and we are at a loss to see how defendant could have been more clearly or more specifically advised of the charges which he was called upon to face.

The allegations as they appear in the eight numbered paragraphs of the notice specify such conduct on the part of the appellant as would disqualify him from initial issuance of an agent's license under section 603 of the Insurance Department Act and of a broker's license under section 622 of the act. An examination

of this act shows that it sets forth the following qualifications for the initial issuance of a license to an agent and to a broker:

A. The endorsement by the sponsoring insurance company, in the case of an application for an agent's license, or by at least two agents or by the officers of any insurance company who are acquainted with the applicant, in the case of an application for a broker's license, to the effect that the applicant is: (1) of good business reputation; (2) of experience in underwriting, other than soliciting and, (3) worthy of a license.

B. Before issuing a license the Insurance Commissioner shall be satisfied that the applicant is: (1) worthy of a license, and (2) reasonably familiar with provisions of the insurance law of this Commonwealth.

Certainly the Insurance Commissioner would have been justified in refusing to issue a license originally to appellant if he had been guilty of the type of conduct specified in the eight numbered paragraphs of the notice prior to the issuance of an agent's or broker's license. Such conduct would have demonstrated clearly that appellant was unworthy of a license either as an agent or a broker.

The third exception:

"3. Since said agent was agent of a mutual insurance company, he was not required to be, was not, and the commissioner had no authority to license him as agent for said company; and the act of May 17, 1921, P. L. 789, 40 PS §233 specifically exempts agents of mutual companies from its provisions."

A reading of section 603 of the Insurance Department Act shows that it does not, as claimed in exception 3, exempt agents of mutual companies from its provisions. It does exempt agents of *domestic* mutual *fire* insurance companies by virtue of the provisions of the last sentence of section 603, which reads:

"Nothing in this section shall be construed as applying to domestic mutual fire insurance companies."

The testimony shows that in committing the acts complained about, appellant was acting as agent for the Commonwealth Mutual Fire Insurance Company of Pennsylvania, a domestic mutual fire insurance company, and as an agent for that company he was not required to be licensed by the Insurance Department. Although the alleged offensive acts were committed by appellant as the agent for a company for which he did not need to be licensed, it does not excuse him with respect to such acts if they were otherwise reprehensible and prohibited. Appellant, the record shows, was acting at the time as the agent for five other insurance companies, and he also at the time held a broker's license for fire and casualty authorities. His conduct as agent for the Commonwealth Mutual Fire Insurance Company of Pennsylvania, for which company he need not be licensed, would throw light on his qualifications to act as agent for the other five companies for which he was licensed, as well as on his right to function under his broker's license. There was ample evidence to support the commissioner's finding as to this exception.

The fourth exception:

"4. There is no competent evidence to support the alleged finding of fact that the respondent holds any license as agent under the Insurance Act of 1921, for the Commonwealth Mutual Fire Insurance Company (finding of fact no. 1)."

An examination of the record will show that the hearing officer did not make any such finding of fact.

Finding of fact no. 1 reads as follows:

"1. That the respondent, Earle C. Sneyd, holds licenses as insurance agent and as insurance broker under the Insurance Commissioner."

As we have pointed out heretofore, the testimony shows, and the records of the Insurance Department verify, that appellant is licensed by the Insurance Department as agent for six different insurance companies and that he also holds a broker's license for fire and casualty authorities.

The fifth exception:

"5. There is no competent evidence to support the alleged finding of fact no. 6, as follows: 'That on or about April 16, 1952 Kobierowski called the business office of respondent and requested that the insurance then in force under policy no. 19190 of the Commonwealth Mutual be transferred to cover a 1950 Chevrolet . . . purchased April 8, 1952, as a used car at a cost of $1,500 (exhibit no. 6), and that there was an encumbrance in favor of the *Williard* Chevrolet Company which should be notified when the transfer of insurance had been effected.' "

The insured testified that at the time he purchased the 1950 Chevrolet in April of 1952, he telephoned Sneyd Underwriters Company because that name appeared as the countersigning agent on the certificate of insurance issued by the Mutual Fire Insurance Company of Pennsylvania, originally covering a 1942 Lincoln sedan, but previously transferred to a 1947 Chevrolet coupe, which insured owned prior to his purchase of a 1950 Chevrolet. The insured further testified that he advised the person who answered the telephone that he had paid off the encumbrance on the 1947 Chevrolet, had purchased a 1950 Chevrolet from Willard Chevrolet Company, that that company was financing this car, that the insurance policy should be changed to cover the new car, and that Willard Chevrolet Company should be so notified.

There was no denial of this testimony and no evidence was introduced by appellant at all. There was an objection by appellant's attorney to the admission

of the testimony concerning the telephone conversation, but no reason was given for the objection. Numerous cases in the Supreme Court of Pennsylvania show that this testimony was properly admitted and we call attention to the case of Reach v. National Bedding Co., 276 Pa. 467, 471 (1923) where appears:

"It may, however, not be amiss to point out, that telephone conversations with unidentified persons have been received in evidence, where circumstances following the conversation indicate that the person who spoke was speaking with authority: 22 Corpus Juris 193; 1 Ruling Case Law 477. Save for the telephone conversation, there is no explanation of the shipment of the 10,000-pound lot."

In this record there is no explanation of the issuance of the endorsement except for this telephone conversation. Section 32 of The Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.32, State Agencies (including the Insurance Department, §51) provides that State agencies:

". . . shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonable probative value may be received."

What was said by the party at the other end of the line is not important in this case; however, it is what happened as a result of the telephone conversation which is the important fact. The uncontradicted testimony is that the insured made the telephone call and that thereafter an endorsement (exhibit 6) on the policy was issued by Sneyd Underwriters Company, transferring the policy to the 1950 Chevrolet. It is obvious from the endorsement that the alleged telephone conversation must have taken place and Sneyd Underwriters Company must have obtained the necessary information as a result of such telephone conversation because certain essential information is accurately set forth in the endorsement, to wit, the make

of the car, its serial number, the date of its purchase, and the purchase price. There is no evidence that it was or could have been obtained from any other source or in any other manner.

The sixth exception:

"6. There is no competent evidence to support the finding of fact no. 8 'That respondent did fail and neglect to note on the endorsement (exhibit no. 6) the encumbrance of *Williard* Chevrolet Company or any encumbrance."

The endorsement itself is the best evidence of appellant's failure to note the encumbrance. The endorsement bears appellant's signature, which appellant did not deny, and an examination of the endorsement discloses that it makes no mention whatever of any encumbrance.

The seventh exception:

"7. That the alleged finding of fact no. 12, i.e., 'That the failure of the respondent to note on the change of car endorsement the *Williard* Chevrolet Company, or any encumbrance in any amount, and its delivery to Truck Sales Corporation was contrary to good underwriting and business practice and did injure the insured' is not a finding of fact, but a conclusion, and is not a conclusion of law, and does not come within any of the provisions of the various sections set forth in section 1, P. L. 616, Act of June 22, 1931, 40 PS 279."

Section 639 of the Insurance Department Act of 1921, as amended by the Acts of June 22, 1931, P. L. 16 and May 9, 1949, P. L. 951, 40 PS §279, must have been in the minds of appellant's attorneys when this exception was drawn. Section 639 is the one under which the proceedings were instituted, the hearing held and the adjudication entered. The section provides, inter alia, that:

". . . upon satisfactory evidence of such conduct as would disqualify such agent or broker or excess

broker from initial issuance of a license under sections six hundred three, six hundred twenty-two and six hundred twenty-four, the Insurance Commissioner may, in his discretion, pursue any one or more of the following courses of action: (1) Suspend or revoke or refuse to renew the license of such offending party or parties; (2) Impose a penalty of not more than one thousand dollars for each and every act in violation of any of said sections by said party or parties."

With these provisions in mind, the undisputed evidence in this case clearly shows that:

1. The insured asked appellant's office to transfer the insurance from the 1947 Chevrolet to the 1950 Chevrolet, stating that he was financing the new car through *Williard* Chevrolet Company.

2. Appellant issued an endorsement (exhibit no. 6) but failed to note any encumbrance on the endorsement.

3. Appellant sent the endorsement to the Pennsylvania Truck Sales Corporation, which had no interest whatsoever in the 1950 Chevrolet, rather than to *Williard* Chevrolet Company, which was financing the purchase of the 1950 Chevrolet.

4. Thereafter the insured was involved in an accident while driving the 1950 Chevrolet and subsequently presented a claim to the insurance company, but the company refused to pay the claim because there was no encumbrance noted on the endorsement, as required by the provisions of the insurance policy.

These facts conclusively appear in the undisputed testimony. The Insurance Commissioner on the basis of these facts was entirely justified in concluding that appellant's failure to note the encumbrance on the endorsement and its delivery to the Truck Sales Corporation was "contrary to good underwriting and business practices and did injure the insured".

The eighth exception:

"8. The Commissioner erred in considering 'The question is, Did the respondent show his ignorance of proper underwriting rules and office procedure in failing to note the encumbrance on the 1950 two-door Chevrolet and sending endorsement and the bill therefor to a third party who was not shown to be a party in interest by the change of car endorsement'."

After considering the testimony and the exhibits, the whole matter narrows down to the question as to whether or not appellant's action in failing to note the encumbrance on the 1950 Chevrolet and sending the endorsement to the wrong party, demonstrated appellant's disregard of proper underwriting rules and office procedure. No other conclusion could have been reasonably reached by the commissioner. It may be that the error was made by an employe in the appellant's office, but nevertheless appellant was liable for the act of his employe and he should have at least checked the policy before it was issued and the notice sent out. The evidence is clear that appellant failed to properly handle the transfer of the insurance as he had been requested by the insured, and that such failure resulted in a loss to the insured when the insurance company refused to recognize a claim under the policy because the endorsement contained no notice of the encumbrance on the car.

Exception No. 9:

"9. The commissioner erred in his conclusion of law no. 1, as follows: 'That respondent, Earle C. Sneyd, was properly served with a notice of the hearing and the continued hearing and the charges he would there be required to answer in accordance with section 639 of the Insurance Department Act of 1921, as amended'."

The letter sent to appellant dated July 21, 1952 (exhibit no. 2) was served personally upon appellant. It specifically states that appellant is charged with a

violation of section 639 of the Insurance Department Act, in that he has evidenced such conduct as would disqualify him as an agent or a broker from initial issuance of a license. In eight numbered paragraphs the notice further specifies the conduct which it was alleged would disqualify him from the initial issuance of a license. The charges are set forth in detail and appellant cannot possibly claim that he did not have adequate notice of the exact matters which were to be considered at the hearing.

The tenth exception:

"10. The commissioner erred in his conclusion of law no. 2, as follows: 'That the hearing officer was duly constituted to hold the hearing and respondent was afforded due process of law in presenting his defense'."

We have already passed upon the matter in our discussion relating to exception no. 1. Exhibit no. 1 is a copy of a memorandum from the Insurance Commissioner to the hearing officer authorizing the latter "to conduct hearings in all cases where, as a result of investigation, you have decided that such a step is necessary and proper".

Appellant had every opportunity to present any evidence he cared to introduce. He was represented by two attorneys, and although appellant himself was present, his attorneys did not see fit to call him as a witness. They likewise did not call any other witnesses to testify on his behalf.

Exception no. 11:

"11. The commissioner erred in his conclusion of law no. 3, as follows: 'That respondent, Earle C. Sneyd, has violated section 639 of the Insurance Department Act of 1921, in that he has evidenced such conduct as would disqualify him as an insurance agent from initial issuance of a license under section 603 of the act.' "

We have already touched upon this matter in discussing several of the preceding exceptions and feel that we need not enlarge upon it here.

Exception no. 12:

"12. The commissioner erred in his order, as follows: 'In consideration of the above findings of fact and conclusions of law, it is adjudged that respondent, Earle C. Sneyd, has violated section 639 of the Insurance Department Act of 1921, as amended, and that by reason thereof he is ordered to pay to the "Insurance Department of Pennsylvania" a penalty of $50 within 30 days from the date hereof, otherwise his licenses as insurance agent and as insurance broker and his right to license by this department will be suspended until such fine is paid.' "

This order of the commissioner was amply supported by the testimony and is free from error as a matter of law. Section 639 of the Insurance Department Act provides, inter alia, that:

". . . upon satisfactory evidence of such conduct as would disqualify such agent or broker or excess broker from initial issuance of a license under sections six hundred three, six hundred twenty-two and six hundred twenty-four, the Insurance Commissioner may, in his discretion, pursue *any one or more* of the following courses of action:

"(1) Suspend or revoke or refuse to renew the license of such offending party or parties;

"(2) Impose a penalty of not more than one thousand dollars for each and every act in violation of any of said sections by said party or parties." (Italics supplied)

Under this language, the commissioner could have (1) suspended, revoked or refused to renew appellant's licenses; (2) imposed a penalty, or (3) suspended, revoked or refused to renew his licenses *and* imposed a penalty. The commissioner imposed the relatively

nominal penalty of a $50 fine, with the provision that if such fine was not paid within 30 days, appellant's licenses would be suspended until the fine was paid. Since the commissioner could have suspended his licenses in the first instance, he had authority to make a conditional suspension of those licenses, depending on whether the $50 fine was paid within the time prescribed.

However, the question of the commissioner's authority to conditionally suspend a license need not be considered because he did not attempt to exercise that authority; only a penalty was imposed. At the request of appellant's attorney, the Insurance Commissioner agreed not to suspend the licenses pending disposition of the appeal which we have before us.

That portion of section 639 of the act which we have quoted provides for the imposition of "a penalty of not more than one thousand dollars for each and every act *in violation of any of said sections* by said party or parties." It could be argued that the words "violation of any of said sections" referred to a violation of the section specifically referred to by number in the first part of section 639 (i.e., sections 604, 606, 607, 623, 631, 632, 633, 634, 635, 636, 637 and 638) and not to any violation of section 639 itself. The result of such an interpretation would be that the Insurance Commissioner would have no authority to impose a pecuniary penalty if he found the agent guilty of such conduct as would disqualify him from initial issuance of a license, but would be compelled, if he determined that some punishment was indicated, to suspend or revoke or refuse to renew his license. We do not think that the legislature ever intended any such result. It seems clear from a reading of section 639 as a whole that the legislature intended to give the Insurance Commissioner the discretion to determine whether the severe penalty of revocation of a license should be im-

posed or whether, under the circumstances of a particular case, the milder penalty of a fine would be appropriate, and that such discretion lies with respect to *all* violations under section 639.

A study of the development of section 639 supports this interpretation and discloses that, in making the various amendments thereto, the legislature had two objectives in view: (1) To enlarge the number of punishable offenses, and (2) to relieve the severity of the punishment by giving the Insurance Commissioner discretion to, in effect, "fit the penalty to the particular offense."

As originally enacted in 1921 (P. L. 789), section 639 provided that, upon satisfactory evidence of the violation of any of the provisions of sections 635 to 638, inclusive, "the Insurance Commissioner *shall* suspend or revoke the license of such offending solicitor or agent or insurance broker."

It will be noted that in its original form, section 639 listed only four sections of the act, the violation of which was punishable, and further made the suspension or revocation of the license the only and mandatory punishment therefor. The commissioner had no discretion to impose a lesser or different penalty.

The amendment of June 22, 1931, P. L. 616, sec. 1, added eight new sections (604, 606, 607, 623 and 631 to 634, inclusive), the violation of which was punishable, and also provided for the imposition of a milder penalty by giving the commissioner the discretion to impose a monetary fine instead of suspending or revoking the license.

The 1949 amendment added as a punishable offense "such conduct as would disqualify such agent or broker or excess broker from initial issuance of a license under Sections 603, 622 and 624" but retained the discretionary power of the commissioner to impose

either the severe penalty of suspension or revocation of the license and/or a monetary penalty.

It is obvious, from the foregoing review of the development of section 639, that the legislature, when in 1949 it added the new punishable offense of "such conduct as would disqualify from initial issuance of a license," did not intend to deprive the commissioner of his existing discretion as to the severity of the penalty and thereby require him to impose the extreme penalty of suspension or revocation of the license for such offense.

Admittedly, an agent's conduct might be of such a serious character that the commissioner would feel compelled to revoke his license in order to protect the public. On the other hand, however, his conduct might be of such a character that, although the commissioner would have been justified in refusing or deferring the initial issuance of a license had such conduct occurred prior to issuance of the license, he would not feel justified in revoking the license for such conduct occurring after the license had been issued and the agent had been operating under it for some time. Even though the agent's conduct might not be serious enough to justify revocation of his license, still the agent should not be allowed to go "scot free" or with no more than a reprimand. The commissioner should be allowed to exercise the discretion the statute gives him by imposing a penalty which would certainly serve as a greater incentive for the agent to "mend his ways," and thereby demonstrate his continued eligibility to hold a license, than would a mere reprimand.

We agree that the present case is of the latter type. If appellant had been guilty of the conduct proved at the hearing before applying for a license, the commissioner would have been justified in deferring the issuance of a license until appellant by subsequent

conduct demonstrated his eligibiltiy for a license. Such conduct, however, would not forever bar appellant from initial issuance of a license. Nor should such conduct, if committed after issuance of a license, require the commissioner to revoke the license, which is the result which would have to follow if section 639 is interpreted as depriving the commissioner of any discretion with respect to the penalty to be imposed.

We find no error in the Insurance Commissioner's adjudication of May 6, 1953. Under the provisions of section 44 of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.44, the adjudication is hereby affirmed and each of the exceptions severally dismissed.