FRANK D. BROWN & another *vs.* GEORGE A. METCALF.

Middlesex.     March 10, 1913. — June 18, 1913.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & DE COURCY, JJ.

*Evidence,* Ancient plans.

Upon the trial of a question as to a boundary of real estate, an ancient plan, produced from proper custody, purporting to be a plan or an office copy of a plan made by a well known surveyor of the day, which is proved to have been used in some transaction with a third person by a predecessor in title of the party offering it in evidence to show the land then claimed by him, properly may be admitted in evidence, although such plan is without the signature of any maker and there is no evidence to indicate whether it is an original or a copy.

HAMMOND, J. This is a petition for the registration of title to a tract of marsh land and flats situated in the city of Everett, on the northeasterly side of Mystic River. The petitioners claimed to be the owners of the whole of the land, while the respondent claimed to be the owner of the westerly half of it. The petitioners are the owners of the record title to what in 1795, in a deed thereof from one Green to one Stone, is described as "a piece of salt marsh land and sedge grass that is called a sedge island;" and the petitioners and the respondent between them own the record title

to a tract of salt marsh and sedge ground conveyed later in 1795 by said Green to one Russell, lying to the west of that conveyed to Stone as aforesaid, the westerly half of this Russell marsh belonging to the respondent and the easterly half to the petitioners. The respondent also owns a tract of marsh land called formerly the Pierce marsh, situated to the west of the Russell marsh.

The main controversy at the trial was as to the location of the westerly boundary line of the petitioners' land. That involved an inquiry into the location of the Pierce and Russell marshes and the sedge island with reference to the tract of land covered by the petition, and the case necessitated a determination of the location on the ground of lines established more than a century ago across marshes and flats on the Mystic River which, as early as 1850, had been so changed by excavation that the original landmarks had to a considerable extent disappeared. Such an inquiry under such circumstances would be likely to be attended with considerable difficulty; and such seems actually to have been the case.

The case is before us upon a report of the Land Court,* and the only question is whether a certain ancient plan called the "Fuller plan," introduced in evidence by the petitioners, was wrongly admitted at the trial. After stating the evidence as to the plan, the report states that the plan was admitted at first *de bene* and continues as follows:

"At the conclusion of the arguments I took the papers and reserved decision, and thereafter made a careful study of all of the plans and records offered, including the plan or sketch in question.

"I found the latter to be a substantially accurate representation of the creeks, marsh and other topographical features of the tract in dispute, as it then existed, to such a degree that its lines can be substantially identified upon the ground to-day. I then transmitted to the recorder's office a decision, which was filed, and forms a part of the record in this case, and which may be referred to. In that decision I admitted said plan in evidence. It is referred to in said decision as 'the Fuller plan.' That expression, however, was intended to identify the paper, and not as a find-

---

* By *Davis,* J.

ing that it was drawn by said Fuller.  I found the paper to be an ancient plan, produced from proper custody, purporting to be either a plan or office copy of a plan by one Fuller, a well known surveyor of the day, being in itself a substantially accurate and proportionately drawn representation, as of 1850, of the land now in controversy, and used by or on behalf of Dalrymple,* although not in any transaction to which the respondent, or predecessors of his in title was a party, as showing the land then claimed by him but without the signature of any maker, or any evidence to show whether it was an original sketch or a copy.  Nothing further appeared in regard to said plan than as above stated."

We understand that the finding that the plan "used by or on behalf of Dalrymple, although not in any transaction to which the respondent, or predecessors of his in title was a party, as showing the land then claimed by him," to be a finding that in some transaction to which Dalrymple was a party, or in which he was interested, this plan was used as showing the land then claimed by him.  It is not a case where the plan simply has been kept undisclosed, but where it has been produced and used in connection with some transaction.

Under these findings the plan was properly admitted.  For the general principles bearing upon this branch of the law see *Drury* v. *Midland Railroad,* 127 Mass. 571, 581, and especially *Whitman* v. *Shaw,* 166 Mass. 451, and cases therein cited.  The case is not like *Boston Water Power Co.* v. *Hanlon,* 132 Mass. 483, cited by the respondent.

By the terms of the report there is to be a decree for the petitioners;  and it is

*So ordered.*

*A. H. Wellman,* for the respondent.
*E. C. Jenney,* for the petitioners.

---

* Dalrymple was a predecessor in title of the petitioners.