HARVEY ALUMINUM (INCORPORATED), A California Corporation, Plaintiff

v.

ANSETTA DE CHABERT, HESS OIL VIRGIN ISLANDS CORP., a Virgin Islands Corporation, and HESS OIL & CHEMICAL CORPORATION, a Delaware Corporation, Defendant

Civil No. 147-1965

District Court of the Virgin Islands

Div. of St. Croix

April 5, 1967

*See, also, 266 F.Supp. 143*

---

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, Virgin Islands (JAMES E. NICKERSON, of counsel), *for plaintiff*

McGOWAN and LOUD, Charlotte Amalie, St. Thomas, Virgin Islands (WM. E. JACKSON, of counsel), *for defendant*

GORDON, *District Judge*

## MEMORANDUM OPINION

Plaintiff has brought a motion for Summary Judgment upon its amended complaint and to dismiss defendant, Hess Oil and Chemical Corporation's three counterclaims. Counsel for both sides have filed extensive briefs and affidavits with respect to their contentions.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO ITS AMENDED COMPLAINT

This issue of law raised herein is whether the Public Surveyor's Book establishing the "Krause Lagoon" in the year 1900 to be the area as designated via Folios 120, 116, 118, 51, 50 and 123 is conclusive per se upon the Court and hence irrebuttable. Plaintiff argues that to permit reviews of land designations of long standing as made by the public official so charged to make in his official capacity, would place every purchaser of land at his peril unless he were to trace the title back to its origin.

In the case J. Latt Golden v. O. D. Rollins et al. (1957), 98 S.2d 409, which involved a boundary dispute, the Court said:

"Our cases adopt the rule that a survey and a map based thereon are admissible in evidence where the county surveyor who made the survey and the map is shown to be qualified and is personally present in court, subject to cross-examination by the opposite party, and testifies as to the correctness of his map.

" 'A plat or map of lands surveyed by a county surveyor is not self-proving, or evidence per se, unless made upon notice to the parties, signed officially, and showing the matters prescribed by statute. Code 1923, § 10352. But the surveyor, shown to have experience as such, may testify as a witness to his survey, and its correctness, whereupon the plat may be offered in evidence in connection with his testimony. ***.' Hill v. Johnson, 214 Ala. 194, 196, 106 So. 814, 815.

"Plats of land made by a county surveyor without notice to the party against whom the plat was offered in evidence, have been

held admissible in evidence for certain purposes, where the surveyor was personally present in court, testifying, and available for cross-examination. Hess v. Rudder, 117 Ala. 525, 23 So. 136; Vandiver v. Vandiver 115 Ala. 328, 22 So. 154.

"As to an ex parte survey made without notice as provided by statute to the objecting party, or his privies, the rule is different when the surveyor is not personally present for cross-examination. The rule has been stated as follows:

" '* * * Generally, private or statutory surveys are not admissible against one who, or whose privies, took no part therein, or had no notice thereof; * * *.' 11 C.J.S. Boundaries, § 114, Note 20; 9 C.J., page 284, Note 63.

" 'The objection, however, is, (as we understand it) that the survey being ex parte, and not made in pursuance of an order of court, is not evidence. But the county surveyor is required by law to survey any land lying in his county, at the request of the owner. Clay's Dig. 353. And although such survey may not within itself be evidence, yet that the surveyor may be examined to prove the boundaries, and that he may illustrate his evidence by the survey so made, we entertain no doubt; and when the surveyor, by his own testimony, has proved the accuracy of his survey, it then may go to the jury as testimony tending to prove the locality of the land and its boundaries. * * *' Nolin v. Parmer, 21 Ala. 66, 70, 71."

Hoffman et al. v. VanDuzee et al. (1937), 19 Cal.App.2d 517, 65 P.2d 1380 involved a dispute over lot boundaries in which the lots were conveyed by reference to a recorded map. The Court decided that the recorded map was correct. In so deciding, the Court stated as follows:

". . . Plaintiffs contend, and the court found, that the recorded map was correct and that no such excess existed in the block."

"It is evident that the whole case turns upon a question of fact. . . ."

". . . The question which the court had to decide was the width of the block in 1906, at the time the land was surveyed and platted into lots. The court assumed, to start with, that the map was correct; this was a proper assumption. O'Farrel v. Harney, 51 Cal. 125. When defendant Clara R. Hubbs conveyed plaintiffs' lot three by reference to the recorded map, the map thereby became a part of the conveyance so far as the location of plaintiffs' lot was concerned. . . ."

". . . Dimensions shown on recorded maps used and referred to in conveyances for the purpose of description express the understandings and agreements of the parties with reference to the locations and boundaries of the land conveyed. They are to be taken as correct until shown by clear proof to be in error. . . ."

". . . Further surveys may prove that the length of the block is greater than that shown on the map. If such excess exists and it is found to be due to an error in the original survey, a question would immediately arise as to the proper allocation of this excess. . . ."

Luther Walker et al. v. Town of Fruithurst (1961), 130 S.2d 12 was a statutory action of ejectment. In its decision the Court said as follows:

". . . As to Exhibit 2, Mr. Hoyt Moore, the Tax Assessor of Cleburne County, Alabama, testified, in substance, as follows: That he began his duties as such tax assessor October 1, 1956. He identified said Exhibit 2 as being page 6 of a plat book designated as Plat Book No. 3, being one of the plat books in the tax assessor's office when he assumed office as such tax assessor. He testified that said tax book 3 purported to be the plat book of the years around 1900.

"In our opinion, the trial court could properly determine from the evidence before it that this map was an ancient document and admissible, and that, therefore, the court did not err in admitting said map into evidence. See also, Sec. 393, Title 7, Code 1940."

In the case of Brown et al. v. Metcalf (1913), 102 N.E. 413, a dispute existed over the western boundary line of petitioner's land and thereby involved an inquiry into the location of the Pierce and Russell marshes and the sedge island. The question on appeal arose as to the allowed introduction of the "Fuller plan". The Court said:

". . . The main controversy was as to the location of the westerly boundary line of the petitioners' land. That involved an inquiry into the location of the Pierce and Russell marshes and the sedge island with reference to the tract of land covered by the petition, and the case necessitated a determination of the location on the ground of lines established more than a century ago across marshes and flats on the Mystic river which, as early as 1850, had been so changed by excavation that the original landmarks had to a con-

86

siderable extent disappeared. Such an inquiry under such circumstances would be likely to be attended with considerable difficulty; and such seems actually to have been the case." ·

"The case is before us upon a report of the land court, and the only question is whether a certain ancient plan called the 'Fuller plan' was wrongly admitted at the trial. After stating the evidence as to the plan, the report states that the plan was admitted at first de bene and continues as follows:

" 'At the conclusion of the arguments I took the papers and reserved decision, and thereafter made a careful study of all the plans and records offered, including the plan or sketch in question.

" 'I found the latter to be a substantially accurate representation of the creeks, marsh and other topographical features of the tract in dispute, as it then existed, to such a degree that its lines can be substantially identified upon the ground today. I then transmitted to the recorder's office a decision which was filed.' "

". . . We understand that the finding that the plan 'used by or on behalf of Dalrymple, although not in any transaction to which the respondent, or predecessors, of his in title was a party, as showing the land then claimed by him,' to be a finding that in some transaction to which Dalrymple was a party, or in which he was interested, this plan was used as showing the land then claimed by him. It is not a case where the plan simply has been kept undisclosed, but where it has been produced and used in connection with some transaction.

"Under these findings the plan was properly admitted. . . ."

In Plattsmouth Bridge Co. v. Globe Oil & Refining Co. (1943), 7 N.W.2d 409, the Court stated:

". . . The theory of the plaintiff was that the particular tract involved herein is accretion land which was conveyed by the deeds and title thereto was quieted by the decree aforesaid."

"The theory of the defendant was that the strip was not accretion land therefore the deeds and the quiet title action did not affect the title thereto. . . ."

". . . The strip in question would not be subject to taxation unless it were accretion land. The statute authorized the survey and the facts shown by the plat were required by the survey. Since the taxing body represents the state, under Section 5486 Code 1939, the plat is presumptive evidence that the strip of land is private property and not publicly owned. It was properly identified, is more

than 30 years old, and was competent as an ancient document. Bidwell v. McCuen, 183 Iowa 633, 640, N.W. 369; Bergman v. Carson, 226 Iowa 449, 452, 284, N.W. 442; McKee v. Pennsylvania R. Co., 255 Pa. 560, 100 A. 454. As opposed to this plat, defendant produced two witnesses who were of the opinion that the strip was original ground and the testimony of Henry Dean on cross examination that the strip was under water at flood stage. Such testimony is not persuasive. We agree with the finding of the trial court. . . ."

In another case involving a boundary line dispute, C. J. Spears et al. v. Randolph (1955), 86 S.E.2d 269, the Court stated:

". . . It appears to us that the evidence clearly shows that the map introduced in evidence by the defendant, over the plaintiffs' objection, was a part of the records in the Office of the Clerk of the Superior Court of Halifax County . . . ."

". . . There was no error in admitting the map in evidence, and in admitting the testimony based thereon, . . ."

Plaintiff in its reply brief cites:

6 Thompson on Real Property (1962 Replacement) § 3052.
Patton on Titles § 69 (1938).
16 Am. Jur., Deeds, § 273 (1938).
Arambula v. Sullivan, 80 Tex. 615, 16 S.W. 436 (1891).

The above authorities merely establish the principal (which is not in issue here) that a deed which does not detail the property description but instead incorporates the description by reference to a plat or map is nevertheless valid.

Regarding the question as to whether the Court is precluded from reviewing the Public Surveyor's Book to determine its accuracy plaintiff cites Chapman v. Polack, 70 Cal. 487, 495, 11 P. 764, 768. Said case is superseded by Hoffman et al. v. VanDuzee, supra. Plaintiff cites Boynton v. Haggart, 120 F. 819, 823 (1903), cert. den. 191 U.S. 573, which is distinguished in that said case involves a special recording statute making it mandatory to record a deed within one year on penalty that the deed thereafter is void as to all subsequent purchasers for value. Said case

in addition deals with the priority of title pertaining to the deed per se and not to a boundary dispute. Plaintiff cites Jones v. Johnston, 18 How. 150, 15 L.Ed. 320 (1855), which decision indeed precludes the review but limits that preclusion to the prohibition of the use of parol evidence.

It is to be noted from the foregoing that where disputes exist as to boundary locations and where an official document sets forth a version of the boundary in dispute the Courts accept such document as evidence. The Courts cited did not determine the documentary boundaries to be correct and absolute per se, although in the Hoffman et al. v. VanDuzee et al. case, supra, the recorded map was held to be prima facie correct. This Court rules that the designation of Krause Lagoon as shown by the Public Surveyor Book in 1900 is not conclusive per se but that if said Book were introduced into evidence it would establish plaintiff's prima facie case. The Court further finds, that material issues on fact exist regarding the establishment of ownership of the area in issue upon the theory just discussed and upon the theory of adverse possession. Therefore, plaintiff's motion for a Summary Judgment upon its complaint will be denied.

### HESS' FIRST COUNTER CLAIM

Defendant Hess' First counter claim asserts said defendant's claim to title to the area in dispute via its alleged chain of title. The Court finds that material issues of fact exist as to the dimensions of the land area thus claimed and for that reason plaintiff's motion is denied as to this counter claim.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT HESS' SECOND COUNTER CLAIM

Defendant Hess' second counter claim for trespass damages is based upon and depends upon its claim of ownership

via its ownership assertions in its first counter claim. This second counter claim cannot be disposed of at this time as a question of law, there being material issues of fact outstanding. Plaintiff's motion for a summary judgment as to defendant Hess' second counter claim will therefore be denied.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT HESS' THIRD COUNTER CLAIM

The third counter claim is founded upon defendant Hess' allegation that it is a third party beneficiary to plaintiff's contract with the Government of the Virgin Islands.

Ordinarily a person must be in privity to a contract to sue for damages for its breach. Individuals may under certain conditions sue as third party beneficiaries of a contract between a municipality and another. Various jurisdictions permit such a suit under a variety of doctrines. See 38 Am. Jur., Municipal Corporations, § 708. Also 17A Corpus Juris Secundum Contracts, § 519 (4).

It has been held in New Jersey Interstate Bridge & Tunnel Commission et al. v. Jersey City et al., 118 A. 264 (1922), that:

"... The statute permitting a third party not privy to a contract, and who has given no consideration therefor, to sue thereon, is limited to those for whose benefit the contract is made, and does not extend to third persons who indirectly and incidentally would be advantaged by its performance. . . ."

A third party action was not permitted in Creedon v. Automatic Voting Machine Corp. (1935), 198 N.E. 415. It was also refused in the case of German Alliance Insurance Co. v. Home Water Supply Co., 226 U.S. 220, 33 S.Ct. 32, 57 L.Ed. 195, where the Court said:

"... Here the city was under no obligation to furnish the manufacturing company with fire protection, and this 'agreement' was not made to pay a debt or discharge a duty to the Spartan Mills, but, like other municipal contracts, was made by Spartanburg in its

90

corporate capacity, for its corporate advantage, and for the benefit of the inhabitants collectively. The interest which each taxpayer had therein was indirect, —that incidental benefit only which every citizen has in the performance of every other contract made by and with the government under which he lives, but for the breach of which he has no private right of action. . . ."

See also H. R. Moch Co. v. Rensselaer Water Co., 159 N.E. 896 (1928).

On the other hand, a third party beneficiary action was permitted in the case of Shell v. Schmidt (1954), 272 P.2d 82.

This Court in the absence of statutory authority will look to the Restatement. The American Law Institute (Restatement) on Contracts, § 145 says:

"A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

a. an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, or

b. the promisor's contract is with a municipality to render services the non-performance of which would subject the municipality to a duty to pay damages to those injured thereby."

The intention referred to in paragraph a above to include third parties as beneficiaries to a contract was found lacking in the case of United States for Use and Benefit of Midland Loan Finance Co. v. National Surety Corporation et al. (1938), 23 F.Supp. 411. Said intention was found to exist in the case of Bator et al. (Trix et al. Interveners) v. Ford Motor Co. (1934), 257 N.W. 906, in which the Court said:

"It seems evident that under the reasoning of both opinions in that case the plaintiff in the present case has a right to rely upon

91

the contract between the City of Detroit and the Ford Motor Company. As a matter of law, therefore, if damage has been done to plaintiff's building by the tunnel construction it was the duty of the Ford Motor Company to replace the same, the non-performance of which duty gives rise to a cause of action in favor of the plaintiff in this case."

"We agree with the trial judge, provided, however, that the ruling is limited to actions involving the right of a member of the public to sue on a public contract, and in conformity to the law as given in section 145 of the Restatement of the Law of Contracts, viz . . . ."

". . . In the drafting of the contract there seems to have been a realization of a duty on the part of the city towards 'those along the line of the work,' and the language exacted of the Ford Motor Company a promise to pay, running to the owners of property that might be damaged. . . ."

It should be noted that the contract language exacted a promise by defendant to pay property owners who might be damaged. In this case upon reviewing Act No. 814 dated February 20, 1962 [See, 33 V.I.C. § 4092], the contract between plaintiff and the Government of the Virgin Islands dated January 1, 1962 and all of the circumstances surrounding its formation and especially Sections 1(4) and (5) of Act 814 and Sections 3, 12, 18(a) and Annex C2 of the said contract, this Court is of the opinion that the parties to the above contract did not manifest in their contract that the above plaintiff should compensate members of the public for injurious consequences nor does the above contract subject the Government of the Virgin Islands to a duty to pay damages to those injured thereby. The Court therefore finds that defendant, Hess Oil Virgin Islands Corp. is not a third party beneficiary to the contract between plaintiff and the Government of the Virgin Islands and this court therefore will enter an order dismissing defendant Hess' third counter claim.